BETTASSO *v.* SNOW-HILL COAL CORPORATION.

[No. 19,806. Filed May 2, 1963. Rehearing denied June 5, 1963. Transfer denied November 20, 1963.]

*Paul P. Boyle,* of Terre Haute, for appellant.

*James V. Donadio, Geoffrey Segar, Howard T. Batman,* and *Ross, McCord, Ice & Miller,* of counsel, all of Indianapolis, for appellee.

PFAFF, J.—This is an appeal from the denial of workman's compensation by the Full Industrial Board to appellant Michael Bettasso for injuries allegedly arising out of and in the course of his employment.

The testimony in the record as to the events on the date of February 5, 1959, when the appellant received all of his injuries is not in conflict. On that day the appellant was performing his regular duties as a driller in the appellee's mine when his drill shorted out. The appellant received a severe electrical shock, so that he was doubled up and rendered practically unconscious. The appellant was then taken out of the mine to the wash-house where he regained consciousness. Company officials called Dr. Luckett, the company doctor, and they also sent for an ambulance.

The ambulance arrived before the doctor, and the appellant was placed on a stretcher in the back of the vehicle. When the ambulance had traveled three or four miles toward Union Hospital, the driver saw Dr. Luckett, who was enroute to the mine. When the ambulance slowed down, it was struck in the rear by a car, which was following it. The impact of the collision threw appellant Bettasso over the driver's seat and up against the windshield in front of the ambulance while he was strapped to the stretcher.

Dr. Luckett administered treatment to Bettasso while he was in the ambulance, and later he gave additional treatment at the hospital. Dr. Luckett cared for the appellant for three or four days, and Bettasso missed work for approximately eight or nine days. After the appellant returned to work, his legs and knees bothered him. He only worked part of the time. Bettasso had never had trouble with his knees before this accident. About September 1, 1959, Dr. Luckett operated on the appellant's knees, and the appellant did not work after the operation until November 5, 1959.

Since he returned to work in November 1959, Bettasso has lost approximately one day every two weeks, because his legs bother him. The appellant does the same work that he did prior to his electrical shock.

There is a conflict in the testimony as to the amount of impairment that the appellant suffered as a result of the accident. The estimates of permanent partial impairment to the man as a whole ranged from 5% to 35%. One doctor did not examine the appellant's knees, therefore he did not make an estimate.

A single hearing member of the Industrial Board determined that on February 5, 1959 the appellant had sustained an accidental injury arising out of and in the course of his employment, and further that he had sustained a permanent partial impairment of 15% of the man as a whole. The appellant was awarded compensation both for permanent partial impairment and temporary total disability.

The appellee filed for a review by the Full Industrial Board. The Full Board made the following determination:

"That on February 5, 1959, plaintiff, while in the employ of the defendant at an average weekly

wage in excess of the maximum, sustained personal injury by reason of an accident arising out of and in the course of his employment with said defendant, of which said accident defendant had knowledge and furnished and paid part of the statutory medical attention and supplies; that as a result of said accidental injury plaintiff suffered no temporary total disability.

"It is further found that plaintiff's condition has now reached a permanent and quiescent state and as a result thereof plaintiff has suffered no permanent partial impairment.

"A majority of the members of the full Industrial Board of Indiana now find for the defendant and against the plaintiff on plaintiff's Form 9 application for the adjustment of claim for compensation, filed with the Industrial Board December 21, 1959."

The appellant's Form No. 9 provides the following description of the accident and cause of injury:

"Claimant received severe electrical shock when drill shorted out, and knocked unconscious temporarily until power removed. Was taken to hospital in ambulance and injured in wreck about 5 or 4 miles from mine."

While the Full Board's determination is not clear, all of the evidence shows that the appellant-claimant was injured. The only logical interpretation then is that the Board determined that two separate accidents were involved here, that the claimant's injuries all resulted from the second accident, and that the chain of causation between injury and employment was broken prior to the second accident. Neither the appellant nor the appellee dispute the fact that the appellant was injured in an accident arising out of and in the course of his employment when he received the electric shock; however, the appellee contends that the chain of causation

was broken before the appellant was injured in the ambulance wreck.

Thus, this Court is faced with the following legal issue: when an employee is placed in an ambulance, which is called by his employer, after the employee is injured in an accident arising out of and in the course of his employment, are additional injuries sustained as a result of another vehicle colliding with the ambulance properly designated as injuries arising out of and in the course of employment so that they also are compensable? Indiana courts have never specifically ruled on this issue.

30 West's Indiana Law Encyclopedia, *Workmen's Compensation*, §101, p. 336, provides:

"A distinction must be drawn between the terms 'out of' and 'in the course of' the employment; the words 'out of' point to the origin and cause of the accident or injury, . . . while the words 'in the course of' point to the time, place, and circumstances under which the accident or injury takes place, . . . "

From this distinction, it can readily be seen that cases which have decided whether injuries arise out of employment are relevant to the problem before the Court.

In *Chicago, etc., R. Co.* v. *Clendennin* (1924), 81 Ind. App. 323, 325, 143 N. E. 303, the Court summarized the law on the subject and their statement still stands as one of the most succinct to date.

"An accident is said to arise out of the employment when there is a causal connection between it and the performance of some service of the employment; and this court held that a causal relation is established when the accident is shown to have arisen out of a risk which a reasonable person might have comprehended as incidental to the employment at the time of entering into it, or

when the evidence shows an incidental connection between the conditions under which the employee works and his resulting injury. *Empire Health, etc., Ins. Co.* v. *Purcell* (1921), 76 Ind. App. 551, 132 N. E. 664. While there must be some causal relation between the employment and the injury, it is not necessary that the injury should have been foreseen or expected. A causal relation is established if, after the event, it appears to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence. *Mueller* v. *Klingman* (1919), 73 Ind. App. 136, 125 N. E. 469. Although the accident may not be connected with, or have any relation to, the particular work of the injured man at the time he received the injury, nevertheless, if in point of fact, the position in which the man was doing the work, and the place he was necessarily required to occupy under his employment obligation were a position and place of danger which caused the accident, it may fairly be said that the accident arose out of his employment. *Thom* v. *Sinclair* (1917), L. R. A. 1917 C 127."

The key words above were re-asserted in the recent opinion, *Stanley* v. *Riggs Equipment Company, Inc.* (1961), 133 Ind. App. 86, 178 N. E. 2d 766, 769 as follows:

" . . . (I)t is not sufficient to merely show employment and an injury during the period of employment, but the claimant must go further and show by evidence having probative value that the *injury had its origin in a risk connected with the employment and that it flowed from that source as a rational consequence.*" (emphasis added)

In the light of the prior holdings of this Court, we believe that the Full Board erred in determining that the ambulance accident did not arise out of and in the course of appellant Bettasso's employment. The injuries incurred when Bettasso re-

ceived his electrical shock and those that followed when he was thrown against the windshield had their origin in a risk connected with his employment, and they flowed from that source as a rational consequence.

The appellee almost exclusively relies upon Judge Crumpacker's decision in *Yarbrough* v. *Polar Ice & Fuel Co.* (1948), 118 Ind. App. 321, 79 N. E. 2d 422. In that case, the appellant sustained an injury to his knee which arose out of his employment. Later this knee gave way while the appellant was carrying trash in his home, as a result he fell and broke his jaw. This Court affirmed the denial of compensation and held that it was a question of fact whether the second injury was the proximate and natural result of the original injury. Judge Crumpacker, for the Court, said that even though the evidence is undisputed the award must be upheld if there is any legitimate theory applicable to the facts on which the award can be upheld. After giving this general rule, he states that the Board in the case before him could have found that the appellant was negligent in walking down basement steps with both of his arms full when he knew that his knee was weak, and while admittedly this is not a defense, the Board may have determined that the appellant's negligence served to break the chain of causation. We believe that *Yarbrough* v. *Polar Ice & Fuel Co., supra,* is distinguishable from the case at bar because there is no action or event which could be held to break the chain of causation.

Our review of the Full Board's proceedings in accordance with due process requirements, as set out in *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399, reveals that the Full Board's determination that the appellant did not suffer any temporary total disability or permanent

partial impairment lacks the necessary support of evidence of probative value. Five doctors testified. Four, Dr. Russell LaBier, Dr. John A. Freed, Dr. Thomas Horwitz, and Dr. C. L. Luckett stated that Bettasso had some permanent partial impairment. The amount varied. Dr. John A. Freed thought that the amount of impairment to the whole man was only 5%. His estimate was the lowest. Dr. Russell LaBier's estimate was the highest—35%. Dr. Richard Nay, the fifth doctor, did not testify that the appellant suffered any permanent partial impairment; however, he admitted that his examination was limited. He did not examine the appellant's knees. The Full Board erred in not finding that the appellant suffered temporary total disability or permanent partial impairment as a result of his injuries which arose out of and in the course of his employment.

Judgment reversed. This cause is remanded to the Full Board for further proceedings in accord with the views expressed in this opinion. In the Board's discretion, it may, on its own motion or on the request of any of the parties, hear such additional evidence as may be deemed necessary to determine the amount of temporary total disability and permanent partial impairment.

Mote, P. J., Hunter and Kelley, JJ., concur.

NOTE.—Reported in 189 N. E. 2d 833. Transfer denied, Myers, C. J., Achor, J., dissenting.