# Richmond

IMMER AND COMPANY, ET AL. v. FRANCIS X. BROSNAHAN.

January 16, 1967.

Record No. 6378.

Present, All the Justices.

*Norman F. Slenker (Duff & Slenker*, on brief), for the appellants.

*Gerald Herz (I. Irwin Bolotin; Lesser & Lesser*, on brief), for the appellee.

CARRICO, J., delivered the opinion of the court.

The novel question presented by this workmen's compensation appeal is whether an employee who suffers a compensable injury may be awarded compensation for additional injuries suffered in an automobile accident occurring while the employee is en route from his place of employment to a doctor's office for further treatment of the original injury.

The Industrial Commission awarded to Francis X. Brosnahan, the employee, compensation for additional injuries suffered in such a subsequent automobile accident. Immer and Company, the employer, and American Motorist Insurance Company, the insurance carrier, have appealed.

The evidence, which is without conflict, shows that Brosnahan was employed by Immer and Company as a dry wall finisher. On January 23, 1965, Brosnahan reported to the job site in the Alexandria, Virginia, area where he was assigned to work. He was removing his tools from his kit when he inadvertently dropped his trowel. He instinctively grabbed for the tool to catch it before it struck the floor. In doing so, the sharp edge of the trowel slashed the palm of his right hand.

The employer was informed immediately of the accident and instructed Brosnahan to seek medical treatment from the nearest physician. The employee drove his personal automobile to the office of Dr. D. Rosa, located approximately two miles from the job site. The doctor administered a tetanus shot, took six stitches in the patient's hand, and instructed him to return at 10:30 a.m. on January 28 to have the stitches removed.

On January 28, Brosnahan reported for work, but later in the morning was authorized by the employer to go to the doctor to have the stitches removed from his hand. Brosnahan again drove his personal automobile. En route from the place of employment to the doctor's office, Brosnahan "passed out" and crashed into a tree, causing the severe and disabling injuries which were the basis of the award of compensation now in dispute.

The evidence discloses that, unknown to the employer, Brosnahan

had been subject to occasional blackouts for a number of years prior to the accident on January 28, 1965. The blackouts, in Brosnahan's words, were caused by what the doctors termed "a vascular malformation in my head." Brosnahan further stated, "These things just came on me, I received no warning."

Brosnahan stated that although he "had some trouble with [his] arm from the tetanus" he did not know "whether that was a contributory factor or not." He further stated that it was "more than likely" that his blackout and the ensuing automobile accident were caused by his vascular condition. The doctor who treated him following the accident reported that Brosnahan "had one of these seizures while driving his car and ran into a tree at high speed."

While the question here presented has not come previously before this court, it has, with some frequency, required the attention of the courts of several of our sister states. The crucial inquiry in practically every such instance has been, just as it is here, whether the disputed injury arose out of and in the course of the employment. (Code, § 65-7.)

It appears that the courts have little difficulty in finding that an additional injury, suffered on a trip to or from a doctor's office for the treatment of a work-connected injury, arises "in the course of employment." The struggle seems to be with determining whether such an additional injury "arises out of the employment." The eternal search in making the latter determination is to find the presence or absence of "a causal connection" between the incidents of employment and the additional injuries.

The decisions of the courts which have come to grips with the problem have resulted in an irreconcilable split of authority. It may be safely stated, however, that the decided weight is in favor of allowing compensation in cases such as the one now before us.

Professor Larson, in his comprehensive and illuminating treatise on Workmen's Compensation Law, 1964 Ed., Vol. 1, § 13.13, p. 192.77, states:

> "When an employee suffers additional injuries because of an accident in the course of a journey to a doctor's office occasioned by a compensable injury, the additional injuries are generally held compensable. If the journey takes place immediately after the first injury occurs, the chain of causation is most readily visible, as when an employee was being rushed to a hospital following a compensable injury and sustained further injury when

the ambulance was involved in a collision. But, quite apart from the element of immediacy, a fall or automobile accident during a trip to a doctor's office has usually been considered sufficiently causally related to the employment by the mere fact that a work-connected injury was the cause of the journey, without any necessity for showing that the first injury in some way contributed to the fall or accident. . . ."

The decisions relied upon by Larson to draw the foregoing conclusions persuade us to adopt those conclusions as our own. We will refer to only two such decisions because they display the compelling logic which requires the result that we affirm the decision of the Industrial Commission in this case.

In the first decision, *Bettasso* v. *Snow-Hill Coal Corporation*, 135 Ind. App. 396, 189 N.E. 2d 833, Bettasso was injured by a severe electrical shock while working in a mine. He was placed in an ambulance which, while en route to a hospital, was involved in a collision with an automobile. Bettasso was thrown against the windshield of the ambulance, causing serious injuries to his knees.

The court held that the ambulance accident arose out of and in the course of Bettasso's employment. The court stated that the injuries suffered by Bettasso when he was thrown against the windshield of the ambulance, "had their origin in a risk connected with his employment, and they flowed from that source as a rational consequence." 189 N. E. 2d, at p. 836.

It will be noted that the *Bettasso* case was decided by the Appellate Court of Indiana. The holding of the Indiana court is peculiarly persuasive here because the Virginia Workmen's Compensation Act is based upon that of Indiana. *Hoffer Bros.* v. *Smith*, 148 Va. 220, 227, 138 S. E. 474.

In the other decision, *Taylor* v. *Centex Construction Company*, 191 Kan. 130, 379 P. 2d 217, Taylor suffered an eye injury while working as a cement mason foreman at a housing project. The next day, at the direction of his employer and while driving his own pick-up truck, he visited a doctor for treatment of the eye injury. While returning to the job site, he was involved in a collision with a road sweeper, receiving serious injuries.

The court held that Taylor's highway accident arose out of and in the course of his employment. The court stated, "It would be folly to say that the claimant's trip going to and from the doctor's office did not 'arise out of' the nature, conditions, obligations, or

incidents of his employment." 379 P. 2d, at p. 221.

The court further stated:

> "In making a trip to the doctor's office, the hazards and risks of highway travel were incidents of his employment. Moreover, the words 'causal connection' certainly do not mean that the accident must result directly and immediately from the performance of work for which the workman was employed. Such a narrowed interpretation would mean that whenever a workman was not directly engaged in the actual work to be done he would be without protection of the Act. . . ." 379 P. 2d, at p. 224.

Professor Larson says of the *Taylor* case that "the arguments put forward by the Kansas court . . . are difficult to answer." Workmen's Compensation Law, *supra*, § 13.13, p. 192.77, at p. 192.80. With that we agree.

Our Compensation Act, just as that of Kansas, requires an employer to furnish to a workman, injured in an industrial accident, such necessary medical attention as the nature of the accident may require. The injured employee is obligated to accept such medical attention, and for his failure so to accept he is debarred from compensation until his refusal ceases. (Code, § 65-85.)

The medical attention which the employer is required to furnish and the employee is entitled and obligated to receive is incidental to and a part of the compensation to which the employee is entitled under the Act. *Merrimac Coal Corp.* v. *Showalter*, 158 Va. 227, 231, 232, 163 S. E. 73. The requirement has as its obvious dual purpose the placing of the cost of such medical attention upon the employer and the restoring of the employee's health so that he may return to useful employment as soon as possible The furnishing and receiving of such medical attention insures, therefore, to the benefit of the employee and, albeit indirectly, to the employer as well.

The requirement of the Act that the employer furnish and the employee accept medical attention is read into the employment contract between them. *Glassco* v. *Glassco*, 195 Va. 239, 241, 77 S. E. 2d 843. When the employer directs or authorizes the employee to seek medical attention for a work-connected injury and the employee follows such direction or authorization, they are but fulfilling the reciprocal obligations of the Act and their contract. To say that an additional injury, suffered by an employee while fulfilling such an obligation, is not also work-connected has little support in modern legal authority and even less in logic.

It is not necessary, as the employer here contends, that the employee show that his presence on the street or highway where his additional injuries are suffered exposes him to an increased hazard peculiar to the work and not common to the public generally. Such a burden was imposed upon the employee by a test once applied by some courts in so-called "street cases." That test is now characterized by Professor Larson as "obsolete." Virginia, following the majority rule, has adopted what is known as the "actual risk test," under which, in the words of Larson, "it is immaterial even whether the degree of exposure is increased, if in fact the employment subjected the employee to the hazards of the street, whether continuously or infrequently." Workmen's Compensation Law, *supra*, § 9.10, p. 75.

The "actual risk test" in "street cases" was first recognized by this court in *Dreyfus & Co.* v. *Meade*, 142 Va. 567, 129 S. E. 336. Although compensation was denied because the employee was on the street on a mission of his own, unconnected with his employment, and thus exposed to the same hazards as the public generally, the court stated:

" . . . The test, however, is not that other persons are exposed to similar risks, but rather that the employment exposes the workman to the particular danger in the street." 142 Va., at p. 574.

The "actual risk test" was directly applied in *Cohen* v. *Cohen's Department Store*, 171 Va. 106, 198 S.E. 476, a case not cited to us by either party to this appeal. In that case, the manager of the store left the business premises and crossed the sidewalk to the curb in response to the call of a customer seated in an automobile. The two men discussed an account owed the store by the customer and also talked about golf. When the manager stepped back from the car, he fell and broke his hip. The injury was held to have arisen out of and in the course of the employment and, therefore, compensable because the work created the necessity of the manager's presence on the sidewalk.

Our holdings in *Rust Engineering Co.* v. *Ramsey*, 194 Va. 975, 76 S. E. 2d 195 and in *Conner* v. *Bragg*, 203 Va. 204, 123 S. E. 2d 393, relied upon here by the employer, do not alter the applicability of the "actual risk test." In the *Rust* case, the employee was denied compensation because it was not shown that the injury was accidental, his exertion in lifting an L-beam being no "greater than that ordinarily incident to employment." 194 Va., at p. 980.

In the *Conner* case, compensation was denied because the injury

did not arise out of and in the course of the employment. The employee was injured in a place where he was not reasonably expected to be while engaged in an activity not incidental to his employment. While, as the employer in the instant case points out, the opinion states, "the causative danger must be peculiar to the work and not common to the neighborhood," that statement cannot be read out of context with the rest of the opinion. In the same paragraph in which the statement is found, it is recognized that an injury is compensable if it appears "to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." 203 Va., at p. 209.

It is clear, from a reading of the *Conner* opinion, that the court in no way intended to depart from its unbroken line of holdings that a showing of causal connection is sufficient to establish that an injury arises out of the employment. Nor was it intended to depart from the holding in the *Cohen* case. In fact, the *Cohen* case is cited as authority at the end of the very paragraph of the *Conner* opinion in which is found the statement upon which the employer here relies. That citation refers specifically to page 111 of the *Cohen* opinion where it is stated that if the work necessitates the employee's presence in the street, a resulting injury arises out of and in the course of employment and is compensable.

Nor is the result changed here because Brosnahan suffered his additional injuries in an automobile accident caused by a blackout resulting from his vascular condition. His situation is closely akin to that of the employee injured as the result of a so-called idiopathic fall, that is to say, a fall caused by some pre-existing weakness or condition of the employee himself. An idiopathic fall injury generally is held compensable where the employee's physical condition unites with some hazard of his employment to cause the accident.

There would appear to be little, if any, difference between an injury resulting from a fall and one resulting from an automobile accident, where each is caused by a blackout. Larson notes the lack of any controlling difference when he writes thus of injuries resulting from a pre-existing weakness or condition of the employee:

"The basic rule, on which there is now general agreement, is that the effects of such a fall are compensable if the employment places the employee in a position increasing the dangerous effects of such a fall, such as on a height, near machinery or sharp

· corners, *or in a moving vehicle. . . .*" [Emphasis added.] Workmen's Compensation Law, *supra*, § 12.11, p. 192.6, at pp. 192.7 to 192.9.

Two well-reasoned decisions, directly in point, support the view that injuries are compensable when received in an automobile accident caused by a pre-existing condition of the employee. In *Allred* v. *Allred-Gardner, Incorporated*, 253 N. C. 554, 117 S. E. 2d 476, the employee was driving an automobile returning to his place of employment after making a service call. He had been subject to blackouts for about fifteen years. He suffered a blackout, and his automobile collided with a pole. In holding the injuries compensable, the court stated:

> "Two circumstances, we think, serve to fix liability on the defendants in this case: First, a blackout to which the claimant had a predisposition; second, the blackout occurred at the time and place the claimant's duties required him to be driving an automobile. The combination of these two produced the accident. In the light of our decisions, the plaintiff's injury may be said to arise out of and in the course of his employment. . . ." 117 S. E. 2d, at p. 479.

In *Tapp* v. *Tapp*, 192 Tenn. 1, 236 S. W. 2d 977, the employee, while making a delivery for his employer, was injured in an automobile accident caused by a blackout resulting from an asthmatic condition. The court found that there was a causal connection between the employment and the injuries and that compensation should be awarded. The court stated:

> " . . . [I]t seems reasonable to conclude, based upon the authorities cited, that where epilepsy, or other physical disturbances, suddenly and without expectation occur and contribute to cause an injury to an employee while at work the same should be held compensable, provided there is present another hazard, incident to the employment which is generally known to exist and which is shown to be the immediate cause of the accident."
> 236 S. W. 2d, at p. 980.

Here, when Brosnahan was involved in the automobile accident, he was en route from his place of employment to the doctor's office to seek further treatment of his original work-connected injury. That injury was the cause of his journey. The activity he was then

engaged in was one which he was authorized and obligated to perform. The hazards of highway travel thus became necessary incidents of his employment. When those hazards united with his preexisting vascular condition to cause the accident, there was established a causal connection between his employment and his additional injuries, and he was entitled to compensation. The award of the Industrial Commission will be

*Affirmed.*