UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BRYANT REAL ESTATE, INCORPORATED;
ROBERT A. WILES AND COMPANY,
INCORPORATED,

        *Plaintiffs-Appellants,*

        v.

TOLL BROTHERS, INCORPORATED,
        *Defendant-Appellee.*

No. 03-1995

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonard D. Wexler, Senior District Judge, sitting by designation.
(CA-02-1311-A)

Argued: May 6, 2004

Decided: August 10, 2004

Before WILKINS, Chief Judge, WILLIAMS, Circuit Judge,
and C. Arlen BEAM, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Elizabeth Anne Keith, ODIN, FELDMAN & PITTLE-MAN, P.C., Fairfax, Virginia, for Appellants. David Glenn Barger, WILLIAMS, MULLEN, CLARK & DOBBINS, McLean, Virginia,

for Appellee. **ON BRIEF:** Dexter S. Odin, Heather D. Dawson, ODIN, FELDMAN & PITTLEMAN, P.C., Fairfax, Virginia, for Appellants. Francis E. Purcell, Jr., WILLIAMS, MULLEN, CLARK & DOBBINS, McLean, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Bryant Real Estate, Inc. (Bryant) and Robert A. Wiles and Company, Inc. (Wiles), plaintiffs, appeal the district court's decision to enter judgment for defendant Toll Brothers, Inc. (Toll). They argue the district court erred in basing its decision on defenses that were not properly before the court. We affirm.

I.

Bryant and Wiles are real estate brokerage firms. They are principally operated by their namesakes who are licensed real estate brokers in Virginia. Toll is a large residential real estate developer. In late 1999, Bryant asked Toll if it was interested in purchasing a parcel of property that was adjacent to a tract already owned by Toll. At that time, Bryant and Wiles portrayed themselves as brokers for the seller, though they had not yet been employed by the property owners. Bryant and Wiles said they suspected the property could be purchased for $26.5 million, including a 6% brokerage commission that would be paid by the sellers.

In May 2000, Bryant again met with Toll. Bryant said the sellers would not pay a commission, so Toll would have to pay the brokerage fee if it wanted Bryant and Wiles' assistance. Toll agreed to employ Bryant and Wiles as its brokers (i.e., as buyer-brokers) and agreed to pay Bryant and Wiles $800,000 for their services if the deal went

through. A May 10, 2000, fax from Bryant and Wiles to Toll referred to this fee as a "brokerage fee" and anticipated Toll's purchase at $25 million, plus the $800,000 fee. The parties did not discuss a termination date.

A few days later, Toll drafted an "agreement of sale" and sent it to Bryant and Wiles, with directions to submit the offer to the property owners. Bryant and Wiles submitted the offer, but it was rejected. A competing purchaser, Centex, successfully negotiated a sales contract with the property owners in September or October 2000. Bryant and Wiles were uninvolved from that point on. In February 2001, the Centex deal fell through and Toll purchased the property for $26 million without Bryant and Wiles' assistance.

After Toll refused to pay Bryant and Wiles the $800,000 that they felt was due, they filed suit, claiming breach of contract and unjust enrichment.[1] Toll answered by denying the allegations of plaintiffs' full performance and entitlement to payment under the May 10, 2000, contract.

In discovery, Bryant and Wiles submitted an interrogatory that asked Toll to identify its bases for denying the complaint's operative contract-claim allegations. On January 9, 2003, Toll deposed Bryant and Wiles and asked them questions regarding the contract's termination date. Toll also asked Wiles if he knew that brokerage relationships expired after ninety days under Virginia law if no definite termination date was stated in the contract. Discovery closed on January 10, 2003. On January 15, 2003, Toll responded to Bryant and Wiles' interrogatory, generally referring Bryant and Wiles to the January 9th deposition of Toll's agent, but that deposition did not mention the ninety-day statutory sunset provision. On January 29, 2003, Toll amended its interrogatory answer, stating for the first time its position that the agreement had terminated because the contract did not have a definite termination date and, by statute, all brokerage relationships without such dates terminate after ninety days. Va. Code Ann. § 54.1-2137(B).

---

[1]Bryant and Wiles have not raised the unjust-enrichment claim in this appeal.

On February 6, 2003, Toll moved for summary judgment, asserting that the contract had terminated under the Virginia statutes before the brokers performed.[2] Because the trial date was scheduled for February 19, 2003, Toll added a motion requesting an expedited hearing or a continuance. Bryant and Wiles opposed the expedited-hearing/continuance motion on February 12, 2003, arguing the pleadings did not raise the statutory defense and there was insufficient time to address it before trial. The district court denied the motion on February 14, 2003, noting that the defendant's "underlying summary judgment motion was untimely noticed." Even though it had been denied, Toll replied to Bryant and Wiles' opposition to the expedited-hearing/continuance motion on February 19, 2003 (the original trial date), and alternatively requested leave to amend or supplement its answer. The district court never ruled on the underlying summary judgment motion or the motion to amend.

A three-day bench trial began on February 22, 2003.[3] While Bryant and Wiles argued throughout the case that the statutory defense was not properly before the court, they made no relevancy objections to evidence that tended to support the allegations. At the conclusion of the testimony, the district court instructed the parties to close the case with briefs. Toll again urged the statutory defense it had included in its summary judgment motion, and Bryant and Wiles continued to argue that it was not properly before the court and, even if it was, the contract between the parties was not a "brokerage agreement," controlled by the statute, but rather a "fee agreement."

The trial court found: the contractual relationship between the parties began on May 10, 2000; the contractual relationship was a "brokerage relationship" under Virginia law; and the brokerage relationship terminated on August 10, 2000, long before Toll purchased the property or had an enforceable contract to purchase it. The

---

[2]Toll's summary judgment motion on the contract claim was also based on the statute of frauds, fraudulent inducement, and breach of statutory and regulatory duties. Bryant and Wiles claimed below and argue here that all of those defenses were waived because they weren't pled. We decline to discuss these other defenses because we find the ninety-day termination statute dispositive.

[3]Trial was delayed three days because of inclement weather.

trial court also found that Bryant and Wiles had breached several obligations they owed Toll, excusing Toll from any duty to pay.[4]

Bryant and Wiles appeal. Jurisdiction was proper in the district court under 28 U.S.C. § 1332, and it is proper here under 28 U.S.C. § 1291.

## II.

Bryant and Wiles' appeal does not go to the merits of its contract claim. Rather, Bryant and Wiles argue that the district court erred in basing its ruling on arguments and defenses that cannot be found in Toll's answer.

First, Bryant and Wiles argue that the district court should not have allowed Toll to "rely upon a contract other than that pled by Bryant and Wiles." We find no merit in this argument. Bryant and Wiles' theory of the case was that they had agreed to provide brokerage services to Toll in exchange for an $800,000 "brokerage fee" payable when Toll purchased the property. They tried to prove that they performed the contemplated services, and that Toll purchased the property. Toll countered that this contract was regulated by Virginia law, and under certain Virginia statutes, Bryant and Wiles could not claim their fee. *See* Va. Code Ann. §§ 54.1-2100 to 2144.

There was only one contract involved in this case—a promise to pay a brokerage fee in return for brokerage services if Toll purchased the property. The dispute centers on the character of that contractual relationship. Whether that relationship was a "brokerage relationship"[5] implicating the Virginia statutes was a question the district court properly reached notwithstanding the state of the defendant's answer.

---

[4]It is unnecessary to evaluate the other defenses the district court relied on given our disposition of this case.

[5]Va. Code. Ann. § 54.1-2130 defines "brokerage relationship" as "the contractual relationship between a client and a real estate licensee who has been engaged by such client for the purpose of procuring a seller, buyer, option, tenant, or landlord ready, able, and willing to sell, buy, option, exchange or rent real estate on behalf of a client."

Bryant and Wiles next argue that the district court erred in allowing Toll to introduce affirmative defenses at the eleventh hour. Specifically, they object to Toll's allegation that under Virginia law, a brokerage relationship expires after ninety days unless the parties agree to some other definite termination date. Va. Code. Ann. § 54.1-2137(B). There was no mention of a termination date in any contract related to this case, and the district court thus held that the parties' contractual relationship had expired. We have heard no argument questioning the validity of the defense if it was properly raised. So our inquiry focuses on whether the defense fell within or had been waived under Federal Rule of Civil Procedure 8(c).

Federal Rule of Civil Procedure 8(b) permits general or specific denials of a plaintiff's averments. Under a general or specific denial, a defendant is entitled to offer evidence that tends to rebut any allegation for which the plaintiff retains the burden of proof.

Rule 8(c), on the other hand, requires that all "avoidance or affirmative defense[s]" be affirmatively pled in the answer. We have defined these defenses as "the defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all allegations in the complaint are true. Generally speaking, affirmative defenses share the common characteristic of a bar to the right of recovery even if the general complaint were more or less admitted to." *Emergency One, Inc. v. American Fire Eagle Engine Co.*, 332 F.3d 264, 271 (4th Cir. 2003) (citation and quotation marks omitted). The question of whether the ninety-day statutory provision constitutes an avoidance or affirmative defense is vexing and, despite the generality of our definition, turns on a number of factors. *See generally* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1271 (1990 & Supp. 2004). How the defense is treated under state law is relevant, but not binding, in a diversity case. 5 *id.* at §§ 1271 & 1272.

The Virginia state courts have not addressed the statute at issue, so we have little guidance as to how it operates in a broker's suit demanding payment for brokerage services. It is possible that this ninety-day limitation is not an affirmative defense at all. Three examples, of many, appear. First, one could read the statute as setting forth a requirement that must be read into all brokerage contracts. *Cf.*

*Immer & Co. v. Brosnahan*, 152 S.E.2d 254, 257 (Va. 1967) (involving a workers' compensation statute that must be read into the employment contract)(citing *Glassco v. Glassco*, 77 S.E.2d 843, 844 (Va. 1953)); *Am. Bonding Co. v. Am. Surety Co.*, 103 S.E. 599, 602-03 (Va. 1920) (involving insurance statutes that must be read into the parties' contract). As a contract term, the provision seems to refine the performance due under the contract by establishing the time frame in which the broker's performance will trigger the client's duty to pay. Toll denied the plaintiffs' performance allegation, and this seems sufficient to put at issue the terms of that performance.

Second, the statutory provision may simply place in repose whatever contractual relationship exists, once ninety days has passed. Toll clearly denied the contract's existence, and this fairly raised the issue of whether it had been vitiated by operation of law.

Third, in the brokerage context, it could be that when Toll engaged Bryant and Wiles, it made an offer for a unilateral contract, acceptable by performance—procuring a seller willing to sell on the buyer's terms.[6] *See Hummer v. Engeman*, 141 S.E.2d 716, 719 (Va. 1965) (holding that a listing agreement was merely an offer of a unilateral contract). If that is the case, then the ninety-day statutory provision seems to extinguish the offer after the period elapses. In any event, Toll clearly denied the existence of the contract and could surely offer evidence of lack of acceptance to substantiate that defense.

We need not determine whether this timeliness issue is something the defendant should be required to affirmatively plead or whether it is something the plaintiff should be charged with proving as an element of (or at least anticipating as an issue in) its cause of action. Even if the ninety-day statute is an affirmative defense that Toll should have raised in its answer, a defense is not waived unless the plaintiff suffers "unfair surprise or prejudice." *Brinkley v. Harbour*

---

[6]Interestingly, the performance contemplated (whether it be under the contract or as an acceptance of an offer) involved a purchase price of $25 million plus an $800,000 fee. Bryant and Wiles never did get the seller to accept those terms. Instead, Toll purchased the property for $26 million. But because the parties have framed this appeal around the pleading issue, we are not inclined to go further.

*Recreation Club*, 180 F.3d 598, 612 (4th Cir. 1999) (collecting authorities). The district court found that Toll's "defenses were raised sufficiently before and during trial." Regarding a plaintiff's prejudice or a defendant's delay, the district court is in the best position to determine the propriety of a particular defense. Thus, our review will be limited to the question of whether the district court abused its discretion in concluding that Toll had not waived the ninety-day defense. *Cf. id.*; *S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co.*, 353 F.3d 367, 373 (4th Cir. 2003).

Here, there was no abuse of discretion. Bryant and Wiles showed no unfair surprise or prejudice. Toll first mentioned the ninety-day limitation in a deposition. It then revised its interrogatory answers to expressly mention the defense. It later included the defense in a motion for summary judgment and a motion to amend its answer. At no time did Bryant and Wiles ask the court for a continuance or seek further discovery. And Bryant and Wiles had a full opportunity to argue the issue in the final briefing of the case.

The prejudice our decisions and the Rules contemplate is not present in all cases where the defense prevails. Rather, the unfairness must come from the timing, not the defeat. With regard to the ninety-day provision, Bryant and Wiles have enumerated no legal arguments they would have made had they had more time to consider and respond to the defense. They have also identified no further discovery that may have enabled them to overcome the defense.[7]

On the other hand, Toll knew of this defense as early as Wiles' deposition, yet it did not amend its answer. In fact, there were no facts that arose in discovery that gave rise to this defense; the plaintiffs

---

[7]We stress that a clearly successful affirmative defense is not beyond the reach of Rule 8(c) and our waiver jurisprudence. In this case, we simply hold that the district court did not abuse its discretion. Had the district court ruled the defense was waived, it may also have acted within its discretion.

As a practical matter, we realize that the late introduction of a clearly successful defense disserves both the parties and the court by prolonging litigation. But we doubt that, in the run of cases, a rule must be invoked to encourage parties to promptly raise clearly successful defenses.

admitted the time of the agreement in their complaint. The amended interrogatory answers also came quite late in the discovery process.[8] And perhaps the most troublesome aspect is that Toll simply points to the plaintiffs' lack of prejudice. Toll makes no effort to explain its delay or to demonstrate that its answer was sufficient because the defense fell beyond the reach of Rule 8(c).

In sum, we are left with plaintiffs who suffered little (if any) prejudice and a defendant who has no excuse for its conduct. While it is true that a defendant who seeks to introduce an affirmative defense at the last minute will usually find himself in a perilous position, we are unwilling to second-guess the district court under the circumstances of this case. The district court did not abuse its discretion by finding that Toll had not waived the ninety-day defense.

One final matter remains: Toll's answer still does not include the statutory mandate as a defense. Insofar as this is an affirmative defense, Rule 15(b) states two methods for amending pleadings. First, if issues not raised by the pleadings are tried by express or implied consent of the parties, then the pleadings are simply regarded as being amended. Fed. R. Civ. P. 15(b) (first two sentences). Second, if a party objects to evidence at trial (i.e., if a party does not consent to the trial of the issue), then the trial court is *required* to amend the pleadings if, among other things, "the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action . . . upon the merits." *Id.* (last two sentences). In this case, we see no evidence in the record that is relevant to the ninety-day defense to which an objection should have been made. It would be odd, then, to imply Bryant and Wiles' consent from their failure to object. And we do not think the record in this case otherwise supports a finding of consent, implied or express. But the lack of prejudice brings this case within the second part of Rule 15(b).

---

[8]Bryant, Wiles, and Toll were also left to wonder about what claims would be addressed at trial. It appears the court conducted a final pretrial conference under Rule 16(d) but issued no subsequent order pursuant to Rule 16(e). Rule 16(e) is mandatory, and generally that order supersedes the pleadings and sets the issues for trial. We do not think this irregularity inures to the benefit of either party, but the entry of such an order may have clarified matters substantially.

Even though the Federal Rules of Civil Procedure do not expressly give us the power to amend the pleadings, it is not necessary to remand the case for a formal amendment. Because the district court was required to make the amendment, and by its disposition treated the pleadings as having been amended, we regard the defendant's answer as having been constructively amended.

*AFFIRMED*