# Richmond

CONTINENTAL LIFE INSURANCE COMPANY, EMPLOYER, AETNA LIFE INSURANCE COMPANY, INSURER v. JAMES S. GOUGH.

January 11, 1934.

Present, All the Justices.

The opinion states the case.

*Parrish & Butcher* and *R. R. Parrish,* for the plaintiffs in error.

*J. W. Eggleston,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This case brings under review an award by the Industrial Commission.

At the hearing only two witnesses testified, the claimant and his doctor. Chairman Nickels stated the facts found by him as follows:

"The claimant, who was agent for the employer, earning a weekly wage of $51.00, sustained an accident by being struck a blow with a hatchet on the head by a boy

whose father was carrying insurance in the company which the claimant was then representing. The assailant was being given, as an accommodation, a ride in the rear seat of the car then being operated by the claimant while in the course of his employment. There was shown no motive for the assailant's striking the claimant the blow on the head with the hatchet. As a result of the blow, he sustained a fracture of the skull.

"The record discloses that claimant was totally disabled from the date of the accident, on January 16, 1933, to the date of the hearing. The prognosis is that of continued disability for some time, dependent upon the progress in making a recovery."

■ Upon this finding, the hearing commissioner reached the conclusion that claimant was not entitled to compensation. Thereupon, he applied for a rehearing, or review, and filed certain affidavits in support of his application. The rehearing was denied, but on a review the majority of the Commission, with Chairman Nickels dissenting, decided that claimant was entitled to compensation, and made an award accordingly. From this award the employer and insurance carrier obtained this writ of error.

The first question to be determined is whether an injury resulting from a wilful and intentional assault by a third party on an employee is an "injury by accident" within the meaning of the Workmen's Compensation Law (Acts 1918, ch. 400, as amended). This term was before this court for construction in the recent case of *Big Jack Overall Co.* v. *Bray, ante,* page 446, 171 S. E. 686, where it was said that it was difficult to formulate a definition of the term which would include all cases coming within the meaning of the act.

If the victim of such an assault were testifying before the grand jury or the trial court upon the criminal prosecution of his assailant he would be surprised and somewhat indignant if, from his evidence, the court or jury reached the conclusion that the assault was the result of an accident, and yet from the same evidence before the

Industrial Commission he expects it to find as a matter of fact that his injuries were the result of an accident.

This same question was before the English Court of Appeal in *Nisbet* v. *Rayne, etc.* [1910], 2 K. B. 689, where the facts were that Nisbet, a cashier, while taking a large sum of money from the bank to the mine with which to pay the workmen, was robbed and murdered. His widow made application for compensation. Cozens-Hardy, M. R., held that "it was an accident from the point of view of Nisbet, and that it makes no difference whether the pistol shot was deliberately fired at Nisbet or whether it was intended for somebody else and not for Nisbet." Farwell, L. J., said: "The intention of the murderer is immaterial; so far as any intention on the part of the victim is concerned, his death was accidental; * * *."

Kennedy, L. J., in his opinion said: "But whilst the description of death by murderous violence as an 'accident' cannot honestly be said to accord with the common understanding of the word, wherein is implied a negation of wilfulness and intention, I conceive it to be my duty rather to stretch the meaning of the word from the narrower to the wider sense of which it is inherently and etymologically capable, that is, 'any unforeseen and untoward event producing personal harm,' than to exclude from the operation of this section a class of injury which it is quite unreasonable to suppose that the legislature did not intend to include within it."

■ Whatever views we might have had on the question as an original proposition, it is now well settled by unanimity of decisions, both in England and in this country, that although the injury is the result of the wilful and intentional assault of either a fellow-employee or a third person, this fact does not prevent the injury from being accidental within the meaning of the act. See *Farmers' Mfg. Co.* v. *Warfel,* 144 Va. 98, 131 S. E. 240, and cases there cited.

■ The same authorities hold that if the assault was personal to the employee and was not directed against

him as an employee, or because of his employment, then the injury is not compensable. In other words, simply because the employee sustains injury from an assault made upon him by a third party does not entitle him to compensation; he must go further and prove that the' assault was directed against him as an employee, or because of his employment; that is, that it arose out of as well as in the course of his employment. This he failed to do, hence Chairman Nickels, upon the evidence then before him, was correct in his conclusion of law.

With the application for a rehearing, there were filed affidavits showing that the two assailants had' been indicted, tried and found guilty of maiming and attempted robbery of claimant, and that the judge of the trial court had under consideration the question whether he would commit the two young men to the Department of Public Welfare or sentence them to the penitentiary.

Under the peculiar circumstances of this case, as hereinafter related, we think the Commission erred in its refusal to grant claimant a rehearing. However, plaintiffs in error request that we treat the statements set out in the affidavits as a part of the record and dispose of the case on the merits, without sending it back to the Commission. So considering the record, we have the following facts:

Claimant's duties required him to travel by automobile through the lower section of Norfolk county for the purpose of writing industrial insurance and collecting premiums thereon. After making collection of a premium from one Doxey, at the latter's home, one of Doxey's sons, Clifton, and a companion, Earl Proctor, requested claimant to give them a ride in his two-seated car to a certain point to which they evidently knew his duties took him. Both of these boys were insured in claimant's company and had been known to him personally for about a year. Before the boys got in the car one of them, without the knowledge of claimant, had concealed' a hatchet on his person, and just before reaching their destination claimant was brutally assaulted by being struck on the head

several times with the hatchet, first by one boy and then by the other; his skull was fractured on both sides, which necessitated a serious operation, and his continued total incapacity for work was admitted at the hearing. During the assault, the car left the road and ran into some sign boards, making considerable noise. This attracted the attention of some people near a service station, who hastened to the rescue, whereupon the assailants ran into the near-by woods without completing the robbery.

The insurance carrier concedes that "the causative danger must be peculiar to the work and not common to the neighborhood," *McNicol Case,* 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, and that "if after the injury it can be seen that the injury was incurred because of the employment it need not be such as to have been anticipated."

██ Injury caused by assault for the purpose of robbery is a hazard or risk to which collectors, paymasters, watchmen, etc., are exposed because of the nature of their duties. See 29 A. L. R. 120, 36 A. L. R. 474, and note. The insurance carrier contends that the injury in this case is not compensable because the assault was made by assailants to whom he had extended the courtesy of a gratuitous ride, and that the assault was traceable to this cause, and not to the nature of the employment.

The affidavits clearly show that the assailants knew claimant was a collector of money for his employer and that his duties requirel him to travel by automobile, at regular intervals, through that section. On the day in question, they planned to rob him, and with that purpose in view obtained a hatchet, which was subsequently used in the assault.

This attack, with its resulting injury, was incidental to the accomplishment of the main purpose of assailants, to-wit, the getting possession of the employer's property, or property used in the employer's business. Contributory negligence of claimant is no bar to an award of compensation. The fact that claimant permitted assailants to get into the car with him made it easier for them to per-

fect their previously conceived evil design, but the injury arose out of a risk incident to the employment. In other words, the fact that claimant gave assailants a ride was not the cause of, but merely incidental to, the assault upon him.

This is not a case where a traveling salesman or collector allowed a "hitch-hiker," or other person, to get in an automobile used as a means of transportation on the business of his employer, and such person, on sudden impulse and because of the opportunity thus afforded, formulated plans to assault and rob him.

The carrier further contends that the statement of one, or perhaps both, of the assailants, shows that the motive for the assault was personal to the employee—that is, that assailants intended to seize claimant's automobile, and for that reason compensation should be denied.

We think the statement of the criminals that the motive for the assault was to take possession of the automobile for the purpose of taking some girls riding, should be "taken with a grain of salt," in view of the fact that they had planned and made preparation for the robbery before they got into the car. The fierceness of the attack upon claimant indicates that they either intended to kill him or to beat him into insensibility. In either event, they would have to dispose of his body before they could use the car. From all the circumstances, it is incredible to believe that assailants, if they had not been frustrated in their plans, would have left claimant's body without taking the money belonging to his employer, which they knew he had in his possession. They evidently thought that a lighter sentence would be imposed upon them if they could convince the trial court that their intention was simply to obtain temporary possession of claimant's car.

But even if we assume that the motive was to get possession of the car, it was admitted in oral argument that while title to the car was in claimant, it was used in the

employer's business and the cost of operation was paid by him.

In some jurisdictions, compensation is denied where robbery of the employee of his own property is the motive for the assault resulting in the injury. See *Bryden* v. *Ind. Accident Com.,* 62 Cal. App. 3, 215 Pac. 1035; *Walther* v. *American Paper Co.,* 89 N. J. L. 732, 99 Atl. 263. In other jurisdictions no such distinction is made between the employer's and the employee's property. In *Katz* v. *Kadans & Co.,* 232 N. Y. 420, 134 N. E. 330, 23 A. L. R. 401, compensation was allowed the dependents of a deliveryman who was killed on the street by an insane person. See *O'Rourke* v. *O'Rourke,* 278 Pa. 52, 122 Atl. 172.

In *Ridenour* v. *Lewis,* 121 Neb. 823, 238 N. W. 745, 80 A. L. R. 119, a radio service man was assaulted and robbed of his own property while making a call to install a radio for his employer. It was held that the hazard of the street, where his employment required him to be, was a risk of the employment and compensation was allowed. See *Katz* v. *Willner,* 103 N. J. Law 698, 137 Atl. 917; *Southern Surety Co.* v. *Shook* (Tex. Civ. App.), 44 S. W. (2d) 425.

In *Derleth* v. *Roach & Seeber Co.,* 227 Mich. 258, 198 N. W. 948, 36 A. L. R. 472, compensation was awarded the dependents of a salesman who died from carbon monoxide while preparing his own car, during working hours, in his own garage, for use the next day in the business of his employer, who paid him a specified sum per mile when the car was used as a means of transportation in calling on the trade.

At the time of the assault, claimant was performing the duties of his employment in a place he was required to be; he was using means of transportation for which the cost was paid by his employer, and even if the motive for the assault was to deprive him of this means of transportation, the assault was not personal to the employee, but arose out of the employment.

The second assignment of error is the action of the Commission in incorporating the employer's first report

of the accident in the record, on the ground that it was not made a part of the record at the original hearing.

This report stated that claimant "was carrying two young men down (the) road in his car while on business of the company and they *waylayed* him with a hatchet."

This assignment of error is of no importance, because in the argument before us the statement was admitted to be true. Commissioner Nickels evidently had this report before him at the first hearing, for he stated in his finding of fact that a hatchet was used in the assault, and no objection was made to this use of the statement. See *Derleth* v. *Roach & Seeber Co., supra.*

The questions involved in the third and fourth assignments of error have no bearing on the merits, but seem to have arisen from a misunderstanding of the parties, and perhaps of some members of the Commission itself.

It seems that the adjuster for the insurance company entertained an honest doubt of the right of claimant to compensation. He communicated this doubt to Commissioner Kizer and suggested that a hearing be had. The employer, on the contrary, seemed to have no doubt about the matter and informed claimant that he would have his own lawyer represent him at the hearing, which he thought would be a mere formality. The assault upon claimant had greatly weakened his mental powers, which he had not regained at the time of the trial. He and his wife, relying upon the assurance of the employer, made no preparation for the presentation of his case, hence the full facts were not disclosed. As soon as Commissioner Nickels announced his opinion both claimant and his wife realized the seriousness of the situation and employed counsel, who immediately applied for a rehearing. At the time this application was heard it developed that the insurance carrier, prior to the first hearing, had caused its agent to call upon assailants, who were then in jail awaiting trial upon the criminal charge, and had obtained affidavits from them showing that the motive for assault was robbery. This evidence, it claimed, had been as available

to claimant as to it, and contended that under the rules adopted by the Commission the application for rehearing or taking further evidence should be refused.

The Commission denied claimant's application, but somewhat censured the carrier for not disclosing the contents of assailants' affidavits at the first hearing.

It was apparent to the Commission that unless claimant was allowed to introduce additional testimony gross injustice would be done him, that the motive for the assault was the turning point in the case, and that at the time of the first hearing the carrier knew what this motive was. The majority of the Commission thought that it was the duty of the carrier to have disclosed this fact at the time, and on review considered the case as if the motive had been proven.

The insurance adjuster took the view that he owed no duty either to the Commission or to claimant to voluntarily disclose any evidence which he had in his possession, and resented the censure.

Both parties were acting in the utmost good faith in the performance of their respective duties. We hesitate to say anything on the subject for fear it might be misconstrued and might be used to disturb the close, cordial relations existing between the Commission, insurance carriers, employers and employees throughout the State. In the great majority of cases the duties of the Commission are administrative and supervisory. Where there is a disagreement over compensation between employer and employee an appeal is made to the judicial powers of the Commission. When this stage is reached the contesting parties proceed under the rules of the Commission along lines similar to judicial trials. The procedure is not as formal and the rules of evidence are not as strict as in a court of law, but neither side should be required, as a duty, to introduce evidence hostile to its position, so long as the parties are dealing at arm's length.

We think that the Commission erred in not granting claimant's application, because the evidence shows

that he was not in full possession of his mental faculties; that he trusted his employer, who was a co-defendant, and had been misled by him to his prejudice. If a rehearing had been granted all of the circumstances surrounding the assault and the motive therefor would have been ascertained and the same result reached.

The Industrial Commission is charged with highly important duties directly affecting employers, employees and insurance companies in all sections of the State. The fact that comparatively few of the many cases decided by it reach this court is proof of the satisfactory manner in which the Commission is performing these duties. The published opinions of the Commission attest the ability, mental integrity and fairness of the individual members.

In this case, the statement in the opinion censuring the insurance carrier for contesting the application for compensation is not, in our opinion, justified by the record. The very fact that one member of the Commission charged with the duty of finding the facts and applying the law thereto dissents from the conclusion of his associates is itself sufficient to establish the reasonable grounds for the position taken by the insurance carrier. If any further proof were needed it is furnished by the fact that two members of this court agree with the minority view of the Commission.

For the reasons stated, the award of the Commission is affirmed.

*Affirmed.*

CAMPBELL, C. J., and GREGORY, J., concur in result.

EPES and BROWNING, JJ., dissent in part and concur in part.

GREGORY, J., concurring:

I am in accord with the opinion of the majority in this case only in so far as it decides the determinative issues. I am not in accord with that part of it in which the ma-

jority has attempted to settle a personal controversy between the Industrial Commission, on the one hand, and counsel for the insurance carrier, on the other. The settlement of this controversy is no part of the duty of this court. It is not essential to a decision of the case. The functions of this court are exhausted when the determinative issues in a case have been decided.

CAMPBELL, C. J., concurs in the views above expressed by GREGORY, J.

EPES and BROWNING, JJ., dissenting:

We are not able to concur in the judgment of the court in this case. Our view is that the evidence shows that Gough's injury resulted from a hazard which he himself had invited or created, and that an award should have been refused on that ground. So far as the evidence shows, Gough, we think, was not acting within either the actual or implied scope of his authority in giving the boys a ride, even though they were sons of his employer's policyholders. In so doing he was on a venture of his own, the risks of which were his own; and he is not entitled to hold his employer liable for the outcome of it.

We are in accord with what is said by HUDGINS, J., in his opinion with reference to the nature of litigation before the Industrial Commission and the relative rights and duties of the parties to such litigation.