**Arlington**

PARK OIL COMPANY, INC., et al.

v.

WILLIE LINWOOD PARHAM

No. 0188-85

Argued June 20, 1985

Decided November 6, 1985

COUNSEL

Mary Louise Kramer (S. Vernon Priddy, III; Sands, Anderson, Marks & Miller, on brief), for appellant.

George E. Allen, III (Allen, Allen, Allen & Allen, on brief), for appellee.

OPINION

**MOON, J.**—Park Oil Company, Inc. appeals an award of compensation to Willie Linwood Parham who was struck by a truck during the course of his employment at Park Oil's service station. Park Oil claims that the injury did not arise out of the employment, but was, instead, caused by an assault unrelated to the business. We hold that Parham's employment exposed him to the actual risk that resulted in his injuries and affirm.

Parham was a night manager and sole attendant at Park Oil's service station, which was both self-service and full service. Parham's duties included pumping gasoline, selling motor oil, and collecting money. There also was a car wash, a drink machine, a car vacuum, a restroom, a fruit stand, and a public telephone on the premises. People not only came into the station for these services, but frequently stopped by to ask for directions, or merely to socialize. All of these activities were expected and condoned by Park Oil. Parham's duties required him to work and walk upon

the lot where vehicular traffic moved.

About thirty minutes before quitting time on May 4, 1984, Parham was walking from the gas pumps in the direction of his parked automobile on the service station lot. Jerry Crump, a friend, was driving by and pulled into the station for a social visit with Parham. When Crump, who had been drinking, saw Parham, he decided to scare Parham by gunning his truck to spin his wheels. As Crump headed straight toward Parham, intending to frighten him, but not to hit him, Crump's accelerator stuck. His brakes were ineffective. His truck pinned Parham to the parked vehicle, causing extensive personal injury. Although Parham heard Crump gunning the vehicle on the lot, he was not aware of the danger until he was struck.

The Industrial Commission found that the accident arose out of and in the course of the employment and that the injuries were not the result of a personal assault. Because such findings are mixed questions of law and fact they are reviewable by this court. *American Furniture Co. v. Graves*, 141 Va. 1, 13-14, 126 S.E. 213, 216 (1925).

To receive compensation, Parham must prove that he sustained an injury "arising out of and in the course of the employment." Code § 65.1-7. Park Oil admits that the accident occurred in the course of the employment, but alleges that it did not arise out of the employment; instead Park Oil argues that the injuries were the result of an assault unrelated to the employment, and thus not compensable.

In support of its position, Park Oil relies on two opinions of the Industrial Commission: *Mullins v. Paylo Supermarkets*, 60 O.I.C. 316 (1981) and *Kuhn v. Eastern Airlines, Inc.*, 60 O.I.C. 272 (1981). Mullins was murdered by her boyfriend's wife while at work but for purely personal reasons. Kuhn, an airline stewardess, sustained injuries as the result of an attempted rape while staying at a hotel in connection with her job. The Commission found that neither assault was aimed at claimants as employees and thus were not compensable.

■ An assaulted claimant must show that the assault was aimed at him as an employee in order to recover. *Baggett Transportation Co. v. Dillon*, 219 Va. 633, 637, 248 S.E.2d 819, 824

(1978); *Hopson v. Hungerford Coal Co.*, 187 Va. 299, 305-06, 46 S.E.2d 392, 395 (1948). In both *Dillon* and *Hopson*, truck drivers were murdered during the course of their employment but there was no evidence that their shootings were directed at them specifically because they were truck drivers. To allow recovery under such circumstances would require the adoption of the positional risk doctrine which Virginia has not adopted. *Baggett Transportation Co.*, 219 Va. at 640, 248 S.E.2d at 823.

■ Virginia has, instead, adopted the "actual risk" test which we are persuaded Parham's circumstances satisfy. Under this test

[i]t is not necessary . . . that the employee show that his presence on the street or highway where his . . . injuries are suffered exposes him to an increased hazard peculiar to the work and not common to the public generally. Such a burden was imposed upon the employee by a test once applied by some courts in so-called "street cases." That test is now characterized by Professor Larson as "obsolete." Virginia, following the majority rule, has adopted what is known as the "actual risk test," under which, in the words of Larson, "it is immaterial even whether the degree of exposure is increased, if in fact the employment subjected the employee to the hazards of the street, whether continuously or infrequently.

*Immer & Co. v. Brosnahan*, 207 Va. 720, 725, 152 S.E.2d 254, 257 (1967) (citing 1 A. Larson, Workmen's Compensation Law § 9.10 (1964)).

■ "The test, however, is not that other persons are exposed to similar risks, but rather that the employment exposes the workman to the particular danger in the street." *Immer & Co. v. Brosnahan*, 207 Va. at 725, 152 S.E.2d at 257 (citing *Dreyfus & Co. v. Meade*, 142 Va. 567, 574, 129 S.E. 336, 338 (1925)).

Although *Immer & Co.* concerned an employee who was injured in an automobile accident while en route to the hospital to obtain treatment for a cut he received at his place of employment (thus explaining the references to the "hazards of the street"), that case is, nevertheless, appropriate in Parham's situation because of the "actual risk" test analysis used by the Court. The fact that Parham was not injured in the "street," in the strict sense, is not important. What is important, as the Commission

found below, is that Parham's "work environment is such that he is exposed to the risk of being injured in a vehicular accident by any negligent driver, whether a customer or a friend, who comes into the premises for nothing other than a 'chat.' "

Parham worked in the flow of traffic. The pay station and pumping station were surrounded by the driveway. He had to stand in the driveway to pump gas. He had to walk across it to conduct the duties of his job. Unlike pedestrians on a street, he was not protected by crosswalk markings or traffic control lights. While he was working, safety from the threat of traffic could not be his prime concern, as it would be with other pedestrians. Therefore, Parham's employment exposed him to the actual risk of being hit by a vehicle while working at the service station.

■ However, the evidence must still eliminate the possibility that Parham was the victim of an assault totally unrelated to his duties as a service station attendant. *See Baggett Transportation Co.*, 219 Va. at 641, 248 S.E.2d at 824. No jurisdiction allows compensation for assaults purely personal to the employee that are not exacerbated by the job. 1 A. Larson, Workmen's Compensation Law § 11.20 (1985).

■ However, we do not believe this case is an assault in the most technical sense of the term. First, to commit an assault, one must either: (1) attempt to commit a battery; or (2) put another person in reasonable fear of receiving bodily hurt. *Merritt v. Commonwealth*, 164 Va. 653, 658, 180 S.E. 395, 397 (1935). One may commit an assault even though the victim is not aware of any acts directed at him, provided the specific intent to commit a battery is present (according to the first definition); it cannot be done by accident or even as a result of negligence. In this case, Crump did not have the specific intent to commit a battery. Also, since Parham was not aware of the danger of being hit, he therefore could not have reasonably feared receiving bodily hurt. Thus, there was no assault in the criminal sense, merely an unintentional battery—a civil wrong.

Secondly, even if we deem this case to be an assault, it fits best into another line of cases which are known as the horseplay cases. It is hard to imagine a form of horseplay that causes injury that is not either an assault or a battery. Almost every jurisdiction now compensates an employee injured as the result of horseplay that

results in injury. This is particularly true where the injured employee is not a participant in the horseplay (such as Parham in this case). 1 A. Larson, Workmen's Compensation Law § 23.10 (1985). The theory of recovery is that the work place creates a situation where workers, being what they are—fallible and sometimes playful human beings—will from time to time engage in pranks, some of which are dangerous. Like an idle employee, as is often the case, Crump saw Parham in a situation vulnerable to Crump's idea of a practical joke; and also like that employee, Crump miscalculated the danger of the situation. He gunned his vehicle, only aiming to frighten, but caused an injury to Parham.

Of course Crump was not an employee but a customer of the business and a friend of his victim; but he fit, even in that circumstance, a category of persons whom the employer knew and expected to come onto the premises—those who came to chat. The fact that Crump was not a fellow employee but a licensee on the premises may be a distinction, but it is not a difference. A claimant should have the same right to recover when injured as result of horseplay by a third party as he would if injured as the result of horseplay by a fellow employee.

In reaching the conclusion that Parham's injury is compensable, we have not, in any way, as Park Oil suggested, expanded worker's compensation coverage to include injuries suffered during the course of employment which arise from personal assaults totally unrelated to the employee's job. Parham's situation is distinguishable in that, first, he was not the victim of an assault in the technical sense, and second, his case is more analogous to the horseplay cases in which a nonparticipant in the act was injured during the course of his employment. Therefore, the decision of the Industrial Commission is affirmed.

*Affirmed.*

Duff, J., and Hodges, J., concurred.