HILL CITY TRUCKING, INC., et al.

v.

MICHAEL LEWIS CHRISTIAN

No. 1224-86

Decided October 6, 1987

108

COUNSEL

M. Lanier Woodrum (Robert Jett Ingram, Jr., Fox, Wooten and Hart, P.C., on brief), for appellants.

Peter O. Ward, Jr., for appellee.

OPINION

**KOONTZ, C.J.** — Hill City Trucking, Inc., and its insurer, New Hampshire Indemnity Co., Inc., appellants, appeal from a decision of the Industrial Commission awarding Michael Lewis Christian, appellee, weekly compensation benefits from October 16 to November 9, 1984. Appellants contend that (1) Christian was not an employee of Hill City at the time of his injury; and (2) Christian's injury did not arise out of his employment. For the reasons stated below, we conclude that there is credible evidence to support the commission's finding that Christian was Hill City's employee at the time of his injury. However, we conclude that Christian's injury did not arise out of his employment. Accordingly, we reverse the decision of the Industrial Commission.

Christian was a long distance truck driver who hauled loads to the west coast for Hill City on and off for thirteen years. Christian testified that the Hill City dispatcher supervised his pickups and deliveries but did not tell him what routes to take. On the

"backhauls," Christian hauled for various other companies. He testified that both he and Hill City arranged these backhaul jobs. Christian received as compensation a commission of twenty-two percent of the value of the load he carried. Hill City paid his expenses and handled his accounting, tax withholding and social security. Christian paid his personal expenses, but Hill City paid for fuel, repairs and upkeep of the tractor and trailer which it owned.

In the early morning hours of October 16, 1984, Christian was on a backhaul carrying a load for F.W.C. of Rustburg. Christian testified that his "bossman," Hill City, arranged this haul. Christian stopped on I-40 in Tennessee to eat and buy fuel. He also cashed a wire transfer of $1,000 from F.W.C. for his operating expenses. He paid $425 for fuel and left the truck stop with $575 cash.

After traveling about twenty miles east, Christian noticed a vehicle with a flashing blue light behind him. Presuming this to be a police vehicle, Christian pulled over, exited the tractor and walked towards the car. Instead of policemen, two men carrying pistols emerged from the vehicle and demanded money from Christian who threw his wallet on the ground and backed away. After taking the wallet, the men shot Christian and fled.

The deputy commissioner found that Christian was Hill City's employee, but that his injury did not "arise out of" his employment because there was no evidence that Christian's injury "was directed at him because of his employment status with [Hill City] . . . ." Upon review, the full commission did not specifically address the issue whether Christian was an employee. However, implicit in its analysis of whether the injury arose out of the employment was the commission's conclusion that there was credible evidence to support the finding that Christian was Hill City's employee. The commission, however, reversed the deputy commissioner, holding that "the robbery which occurred was a risk of the employment . . . ." The commission reasoned as follows:

> [I]t is generally known that long distance truck drivers frequently carry money with which to pay their expenses during the trip. The claimant's truck and trailer were owned by a Lynchburg, Virginia concern and we must assume that the truck was so identified. Moreover, the vehicle license tags would identify the truck as a Virginia vehicle and the claim-

ant had stopped only a short distance from the robbery point where he received a large sum of money with which he paid some $425.00 for fuel.

\* \* \*

Here, the claimant was not in a place where persons carrying money might congregate but was in an employment in which persons are known to carry money for travel expenses.

■ Hill City first argues that Christian was not its employee on October 16. We disagree because the record contains credible evidence to support the commission's finding. *See Dublin Garment Co. v. Jones*, 2 Va. App. 165, 167, 342 S.E.2d 638, 638 (1986). "The fact that contrary evidence may be in the record is of no consequence if there is credible evidence to support the Commission's findings." *Russell Loungewear v. Gray*, 2 Va. App. 90, 95, 341 S.E.2d 824, 826 (1986).

■ The so-called "power of control" test determines whether employee status exists. *See Richmond Newspapers v. Gill*, 224 Va. 92, 98, 294 S.E.2d 840, 843 (1982). In addition to power of control, these factors are relevant: (1) selection and engagement of the servants; (2) method of wages; and (3) power of dismissal. *Baker v. Nussman & Cox*, 152 Va. 293, 303, 147 S.E. 246, 249 (1929). The power of control must relate not only to result, but also "the means and methods by which the result is to be accomplished." *Richmond Newspapers, Inc.*, 224 Va. at 98, 294 S.E.2d at 843. Further, "[i]t is the ultimate right of control . . . not the overt exercise of that right, which is decisive." 1C A. Larson, *The Law of Workmen's Compensation* § 44.00 (1986).

Here, the record supports the conclusion that Christian was Hill City's employee. Christian was a truck driver by trade and he referred to Hill City as his "bossman." The Hill City dispatcher supervised Christian and told him where to pick up and deliver and sometimes arranged backhaul jobs. While Hill City did not dictate the routes Christian took, it is clear that it could have if it had chosen to do so. Further, Hill City furnished the truck and trailer and paid for all upkeep and operating costs. When Christian was injured, Hill City sent a replacement to complete the backhaul. Hill City handled Christian's payroll accounting and

withheld taxes and social security for him. We are unpersuaded by Hill City's argument that Christian was not an employee because he was paid on a commission basis. Further, although Christian was hauling for F.W.C. at the time of his injury, Hill City had arranged this backhaul. On balance, the factors in favor of employee status clearly outweigh those of independent contractor status.

Hill City next argues that even if Christian was its employee, his claim is not compensable because the injury did not "arise out of" the employment. "In every worker's compensation case the claimant must prove: (1) an injury by accident, (2) arising out of and (3) in the course of his employment." *Bradley v. Philip Morris, U.S.A.*, 1 Va. App. 141, 143, 336 S.E.2d 515, 516 (1985); Code § 65.1-7. "A finding by the commission that an injury arose out of and in the course of employment is a mixed question of law and fact and is properly reviewable on appeal." *Dublin Garment Co. v. Jones*, 2 Va. App. at 167, 342 S.E.2d at 638. Accordingly, the court must determine "whether the Commission's [fact findings] are sufficient in law to justify [an] award of compensation on the ground that the accident not only happened during the course of employment but also arose out of it." *Baggett Transportation Co. v. Dillon*, 219 Va. 633, 637, 248 S.E.2d 819, 822 (1978)(citations omitted).

While the language of the Workers' Compensation Act should be liberally construed to carry out its humane and beneficial purposes, the court may not:

> authorize the amendment, alteration or extension of its provisions. The expressions "arising out of" and "in the course of" are not synonymous and are not used conjunctively; both conditions must be present before compensation will be awarded and the burden is on the claimant to prove them by a preponderance of the evidence.

*Id.*; *accord R & T Investments, Ltd. v. Johns*, 228 Va. 249, 252, 321 S.E.2d 287, 289 (1984).

To this end, Virginia has refused to embrace the "positional risk" doctrine. *Baggett*, 219 Va. at 640, 248 S.E.2d at 823. Under that doctrine, "[a]n injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and

obligations of the employment placed claimant in the position where he was injured." 1 A. Larson, *The Law of Workmen's Compensation* § 6.50 (1986) (emphasis in original). Thus, in a "positional risk" jurisdiction, compensation is allowed in cases of "stray bullets, roving lunatics, and other situations in which the only connection of the employment with the injury is that its obligations placed the employee in the particular place at the particular time when he was injured by some neutral force . . . ." *Id.*

In Virginia, however, an injury "arises out of" the employment only if it is an "actual risk" of the employment.

> Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the [worker] would have been equally exposed apart from the employment. *The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant.* It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment . . . .

*Baggett*, 219 Va. at 638, 248 S.E.2d at 822 (emphasis added) (citations omitted); *see City of Richmond v. Braxton*, 230 Va. 161, 164, 335 S.E.2d 259, 261 (1985); *R & T Investments*, 228 Va. at 252-53, 321 S.E.2d at 289; *accord United Parcel Service v. Fetterman*, 230 Va. 257, 258-59, 336 S.E.2d 892, 893 (1985); *see also Hopson v. Hungerford Coal Co.*, 187 Va. 299, 305-06, 46 S.E.2d 392, 395 (1948); *Memorial Hospital of Martinsville v. Hairston*, 2 Va. App. 677, 682, 347 S.E.2d 527, 529 (1986); *Park Oil Co. v. Parham*, 1 Va. App. 166, 169, 336 S.E.2d 531, 533 (1985). If the claimant can show that the employment exposed him to a particular danger, compensation is proper. *Park Oil Co.*, 1 Va. App. at 169, 336 S.E.2d at 533.

We agree with Hill City that *Baggett Transportation Co. v. Dillon* is controlling here. There, Bobby Dillon, a long distance

truck driver, was inexplicably shot and killed while adding oil to his truck. The issue presented for the Court's consideration was whether a presumption that the death arose out of Dillon's employment should apply where there was no evidence to show either the cause of or the motive for the death. On appeal, the Supreme Court reversed the Industrial Commission's award and concluded that the death was non-work related and "could have occurred whether Dillon was a hitchhiker, a stranded motorist or a truck driver." 219 Va. at 643, 248 S.E.2d at 825. The Court refused to apply the "positional risk" theory and denied Dillon compensation for the following reasons:

> [T]he risk was not peculiar to the work. We cannot say that Dillon's occupation as a truck driver subjected him, to an abnormal degree, to being shot accidentally or intentionally alongside a public highway. Such a danger is one to which members of the general public who are not truck drivers are likewise exposed.

*Id.* at 644, 248 S.E.2d at 825.

██ We agree with Christian that *Baggett* stands for the proposition that compensation is proper in a case where it is clear that a victim was exposed to an "actual risk" and was purposefully singled out and assaulted directly because of his employment. Christian argues that the instant case presents such a scenario. He makes the following argument:

> The compensability of such an injury is particularly clear where, as [here], the evidence makes a plausible connection between the employee's work activities and the shooting in the course of a robbery, showing the robbers' opportunity to know that their target was a good one.

Likewise, the commission reasoned that Christian's injury was a risk of his employment because "long distance truck drivers [are generally known to] carry money with them with which to pay their expenses during the trip." We find, however, that neither the record nor common experience supports these contentions. First, a "plausible connection" alone is insufficient to carry Christian's burden of proof absent evidence that his assailants purposefully singled him out as a result of his employment. Christian himself testified that he did not know why he had been robbed. On that

point the record contains the following dialogue:

Q: Do you know of any reason why they picked you out?

A: No.

Q: You didn't have any conversation with them?

A: No.

Q: You didn't see them at any truck stop or anything back before this happened?

A: No, I didn't. They *probably* were watching me and I didn't know it. I had just cashed a check for $1,000.00.

Q: Okay, but do you know whether they were watching you?

A: They most likely were.

Q: Listen to the question. Do you know they were watching you?

A: No, I really don't know.

Q: Did you ever see them around any place where you cashed a check?

A: No, no I didn't.

(emphasis added). Thus, the only connection between Christian's assault and his employment is Christian's own speculation that he may have been targeted. Further, there is no evidence in the record from which the commission could have concluded that the truck bore any logo or that Virginia license plates identified Christian as a long distance trucker. Rather, the assault occurred in Tennessee, a state contiguous to Virginia. Thus, only speculation supported the commission's conclusion that Christian's assailants knew he was a long distance truck driver. More significantly, we find it contrary to human experience to assume that "it is generally known that long distance truck drivers frequently carry money with which to pay their expenses . . . ." We find it just as likely that for safety, convenience and record keeping purposes truckers carry credit cards instead of cash. Even if some long dis-

tance truck drivers do carry money for traveling expenses, we cannot say they are at higher risk than other travelers or vacationers who carry large amounts of cash for expenses. Further, there was no evidence presented that Christian *always* carried large sums of money or that other truckers do as a rule. In Virginia, the law is clear that to be compensated under the "actual risk" test, the claimant's injury must arise from a risk not shared by the general public. *United Parcel Service v. Fetterman,* 230 Va. at 258-59, 336 S.E.2d at 893; *City of Richmond v. Braxton,* 230 Va. at 164, 335 S.E.2d at 261; *R & T Investments,* 228 Va. at 253, 321 S.E.2d at 289; *Baggett,* 219 Va. at 638, 248 S.E.2d at 822. Such is simply not the case here.

We also find the instant case distinguishable from *R & T Investments,* where claimant's injury during a bank robbery arose out of her employment. As a runner for a gold and silver exchange, the claimant's routine duties included making bank deposits and regularly handling and carrying large sums of money. 228 Va. at 253-54, 321 S.E.2d at 288. For these reasons, we agree with the deputy commissioner that the record is "devoid of any evidence or testimony that the robbery of Mr. Christians (sic) was directed at him because of his employment status."

We also reject Christian's argument that his injury is compensable under the principles set forth in *Metcalf v. A.M. Express Moving Systems, Inc.,* 230 Va. 464, 339 S.E.2d 177 (1986). In that case a truck driver's claim was denied where he was attacked by an unknown assailant at night while sleeping in the tractor of his truck. The Court found that the injury did not arise out of the employment because there was no evidence of a causal connection between the assault and the employment. The assailant made no robbery attempt and the Court again implicitly rejected the "positional risk" theory, finding it more likely that Metcalf was attacked for personal reasons than employment reasons. *Id.* at 470, 339 S.E.2d at 181. Christian argues that the requisite causal connection outlined in *Metcalf* is present here in that Christian was purposefully singled out, robbed and assaulted because he was a truck driver with cash. We disagree. Rather, we find in this case as did the *Metcalf* Court that "the circumstances of the present case are not such that the only rational inference to be drawn is that the assault against [claimant] was related to his employment." *Id.*

In summary, we hold that Christian was Hill City's employee on October 16, 1984. However, we reverse the Industrial Commission's award to Christian because we find the evidence insufficient as a matter of law to sustain the conclusion that Christian's injury arose out of his employment. Because we find that the risk of injury to which Christian was subjected was one shared by all travelers, we conclude that Christian's claim must fail under the "actual risk" doctrine. For these reasons, the decision appealed from is reversed.

*Reversed.*

Keenan, J., concurred.

Moon, J., concurring in part and dissenting in part.

I concur with the majority's conclusion that claimant was an employee of Hill City Trucking at the time of his injury; however I disagree with the conclusion that claimant's injury did not arise out of his employment.

The majority opinion contains the following assertion: "Because *we find that the risk of injury to which Christian was subjected was one shared by all travelers,* we conclude that Christian's claim must fail under the 'actual risk' doctrine." (emphasis added). I believe that this statement, as applied to the facts of this case, conflicts with existing Virginia law. As the majority correctly points out, Virginia has adopted the "actual risk" test. Under this test,

> [i]t is not necessary . . . that the employee show that his presence on the street or highway where his . . . injuries are suffered exposes him to an increased hazard peculiar to the work and not common to the public generally. . . . Virginia, following the majority rule, has adopted what is known as the "actual risk test," under which, in the words of Larson, *"it is immaterial even whether the degree of exposure is increased,* if in fact the employment subjected the employee to the hazards of the street, whether continuously or infrequently."

*Park Oil Co. v. Parham*, 1 Va. App. 166, 169, 336 S.E.2d 531, 533 (1985)(quoting *Immer & Co. v. Brosnahan*, 207 Va. 720, 725, 152 S.E.2d 254, 257 (1967)). Furthermore, *"the test . . . is*

*not that other persons are exposed to similar risks,* but rather that the employment exposes the workman to the particular danger in the street." *Park Oil Co.,* 1 Va. App. at 169, 336 S.E.2d at 533 (emphasis added).

Reliance upon *Baggett Transportation Co. v. Dillon,* 219 Va. 633, 248 S.E.2d 819 (1978) is, in my opinion, misplaced. In that case, the claimant was found beside his truck, killed by a single shot to the chest. Therein the Supreme Court stated:

> Investigation by the Virginia State Police showed *there had been no attempt to hijack the truck or its cargo or to rob either Dillon or Farris* [travelling with Dillon, and asleep in the truck at the time of the shooting]. Metal seals on the rear doors of the trailer were intact after the incident. The investigation further disclosed that other shooting incidents had occurred at or near the rest area [where Dillon had parked his truck]. During the weekend of Dillon's death, another .22-long caliber bullet had been fired into the widow [sic] of the rest area building.

*Id.* at 636, 248 S.E.2d at 821 (emphasis added). The Court concluded that a presumption that the injury arose out of the employment could not be applied in the case and, since no other evidence linked the employment to the assault, the claim would be denied.

Similarly, the Court, in *Metcalf v. A.M. Express Moving Systems, Inc.,* 230 Va. 464, 339 S.E.2d 177 (1986), cited the absence of evidence of a robbery or theft of the truck's contents in denying compensation to the driver, who was shot by an unknown assailant. Thus, in *Baggett* and *Metcalf,* neither claimant was able to negate the possibility that the assault was purely personal and unrelated to the employment.

In the present case, the evidence negates any purely personal motive behind the assault. Substantial evidence shows that robbery was the motive for Christian's shooting. In any event, "the fact that the accident happens along a public highway, and that the danger is one to which the general public is likewise exposed, is not conclusive against the existence of . . . [a] causal relationship" between the injury and the employment. *Baggett,* 219 Va. at 638, 248 S.E.2d at 822. Christian only had to show that the em-

ployment exposed him to a particular danger. *Park Oil Co.*, 1 Va. App. at 169, 336 S.E.2d at 533; *Johnson v. Chesterfield County*, 5 Va. App. 15, 359 S.E.2d 833 (1987). Christian's employment exposed him to the danger of being robbed on a highway in the middle of the night.

Therefore, I would affirm the award of compensation.