**Richmond**
HILL CITY TRUCKING, et al.
v.
MICHAEL LEWIS CHRISTIAN
No. 1224-86-3
Decided September 6, 1988

COUNSEL

M. Lanier Woodrum, Robert Jett Ingram, Jr., (Fox Wooten & Hart, P.C., on brief), for appellant.

Peter O. Ward, Jr., on brief, for appellee.

OPINION

## ON REHEARING EN BANC

MOON, J. — Hill City Trucking, Inc., seeks reversal of an Industrial Commission award providing benefits to Michael Lewis Christian who sustained injuries when he was shot and robbed during the course of his employment.[1] Hill City argues that the

---

[1] Appellant's initial appeal raised the additional issue of whether Christian was in the course of his employment with Hill City Trucking, Inc., at the time of the injury. A panel of this court unanimously upheld the commission's decision on that issue. *Hill City Trucking v. Christian*, 5 Va. App. 106, 360 S.E.2d 867 (1987). With one dissent, the panel reversed the commission's ruling that the injury arose out of the employment. Since there was no dissent on the issue of whether the injury occurred in the course of Christian's employment, we consider on this appeal only the question of whether the injury arose out of Christian's employment. *See* Code § 17-116.02(D)(i).

injury did not arise out of Christian's employment.[2] We disagree and affirm the award.

Christian was a long distance truck driver, employed by Hill City of Lynchburg, Virginia. He had hauled loads to the West coast for more than thirteen years. In the early morning of October 16, 1984, while traveling back from California to Maryland, he stopped at a truck stop on Interstate Highway 40 in Tennessee to eat and buy fuel. Before leaving he cashed a wire transfer of $1,000 he received for his operating expenses. He paid $425 for the fuel and left the truck stop with $575 cash. He travelled twenty miles east and at approximately 3:00 a.m., noticed what he thought was a police car with blue flashing lights behind him. He pulled over, climbed down from the truck and walked towards the car. Two men carrying pistols confronted him and demanded his money. He threw his wallet on the ground and backed away. After taking Christian's money and wallet, the men shot Christian and fled. Christian sustained serious injuries which required medical treatment and prevented him from working. He subsequently filed a timely application for workers' compensation benefits.

Whether an injury "arose out of" the employment within the meaning of Code § 65.1-7 is a mixed conclusion of law and fact properly reviewable by this court. *Conner v. Bragg*, 203 Va. 204, 207, 123 S.E.2d 393, 395 (1962). The question presented asks whether Christian's employment exposed him to the risk of being injured as the result of a robbery. *Immer & Co. v. Brosnahan*, 207 Va. 720, 723, 152 S.E.2d 254, 257 (1967).

The commission found that it is generally known that long distance truck drivers carry money with which to pay their expenses during a trip. Whether truck drivers generally carry money may be, as appellants argue, a matter of supposition. However, it is highly unlikely that a truck driver miles from home will not have cash or other valuables either in his possession or on the truck. Individuals may travel from one state to another in private vehicles just to transport themselves without carrying valuable property. However, tractor trailer rigs are normally used to haul property, not solely to carry the driver. It is apodictic that persons who

---

[2] Code § 65.1-7 provides: "Unless the context otherwise requires, 'injury' and 'personal injury' mean only injury by accident, or occupational disease as hereinafter defined, *arising out of* and *in the course of* the employment . . . ." (emphasis added).

haul property vulnerable to asportation are subject to robbery. Thus, the question is not whether, in fact, more truck drivers carry credit cards or cash, but whether driving a tractor trailer truck subjects one to the chance of being robbed. Obviously, a truck driver must have some means of paying his way. Christian's work required him to be on dark roads, late at night in unfamiliar surroundings. After considering all the facts and circumstances, we believe that the commission correctly found that robbery was a risk of Christian's employment.

 An injury arises out of the employment if the accident appears to have had its "origin in a risk connected with [the] employment, and flowed from that source as a rational consequence." *Id.* at 723, 152 S.E.2d at 257 (quoting *Bettasso v. Snow-Hill Coal Corp.*, 135 Ind. App. 396, 401, 189 N.E.2d 833, 836 (1963)). Under this rule described as the "actual risk test":

> It is not necessary . . . that the employee show that his presence on the street or highway where his . . . injuries are suffered exposes him to an increased hazard peculiar to the work and not common to the public generally. . . ; "it is *immaterial even whether the degree of exposure is increased*, if in fact the employment subjected the employee to the hazards of the street, whether continuously or infrequently."

*Id.* at 725, 152 S.E.2d at 257 (1967) (quoting 1 A. Larson, *Workmen's Compensation Law* § 9.10 (1964)) (emphasis added). In *Park Oil Co. v. Parham*, 1 Va. App. 166, 336 S.E.2d 531 (1985), we upheld the award of benefits to a service station employee who was injured when a truck hit him during the course of his employment. We applied the actual risk test and asserted, "The test . . . is not that other persons are exposed to similar risks, but rather that the employment exposes the workman to the particular danger in the street." *Id.* at 169, 336 S.E.2d at 533 (quoting *Immer*, 207 Va. at 725, 152 S.E.2d at 257).

In *R & T Investments v. Johns*, 228 Va. 249, 321 S.E.2d 287 (1984) our Supreme Court relied upon Professor Larson and opined "that among the occupations that have, for obvious reasons, been held to subject the employee to a special risk of assault and increased likelihood of robbery are those jobs that involve carrying money or that entail the handling of money." *Id.* at 253,

321 S.E.2d at 289. Christian need not show that he was subject to a special risk, but only that his employment subjected him to the risk of the robbery which resulted in his injuries. *Immer*, 207 Va. at 725, 152 S.E.2d at 257.

Hill City argues that the evidence did not show that Christian's employment attracted the robbers to him. The assault, according to the employer, could have occurred if Christian were in his own personal car. A similar argument was made and rejected in *Continental Life Ins. Co. v. Gough*, 161 Va. 755, 172 S.E. 264 (1934). Gough, an insurance agent, picked up two hitchhikers in his personally owned automobile while on his route. One of them attacked him with an ax, and Gough sustained serious injuries while driving. A collision prevented the assailants from completing their robbery. The robbers claimed that they were only after the car for the purpose of "joy riding."

The Court, after making light of the assailants' claim that they would not have taken Gough's insurance collection money, asserted:

At the time of the assault, claimant was performing the duties of his employment in a place he was required to be; he was using means of transportation for which the cost was paid by his employer, and even if the motive for the assault was to deprive him of this means of transportation, the assault was not personal to the employee, but arose out of the employment.

*Id.* at 763, 172 S.E. at 267. The *Gough* court further noted that "[i]njury caused by assault for the purpose of robbery is a hazard or risk to which collectors, paymasters, watchmen, etc. are exposed because of the nature of their duties." *Id.* at 761, 176 S.E. at 266. However, the opinion did not limit recovery only to high profile cash carriers.[3]

---

[3] We find it significant that the Court in *Gough* emphasized that robbery motivated the attackers. The court relied in part upon the decision in *Ridenour v. Lewis*, 121 Neb. 823, 238 N.W. 745 (1931) where compensation was allowed to a radio serviceman who had been assaulted and robbed of his own property while making a call to install a radio for his employer.

The case of *Southern Motor Lines Co. v. Alvis*, 200 Va. 168, 104 S.E.2d 735 (1958) provides further guidance in determining the meaning of "arising out of" the employment. Alvis, a truck driver, fell to his death from the third story window of the hotel where he slept while away from home on his employer's business. The Court noted that because the safety of Alvis and his cargo demanded that he be rested and alert, the employer had provided him a hotel room in which to sleep. Considering whether Alvis' death arose out of his employment, the Court reasoned:

> The words "arising out of" mean there must be a reasonable causal connection between the employee's work and the resultant injury or death. A risk is incidental to the employment when it belongs to or is connected with what the employee has to do in fulfilling his contract of service.

*Id.* at 171, 104 S.E.2d at 738. The Court found under the facts in *Alvis* that the accident arose out of the employment.

■ Repeated judicial pronouncements have confirmed that Virginia employs the actual risk test to determine whether an injury arises out of the employment. *Olsten of Richmond v. Leftwich*, 230 Va. 317, 319, 336 S.E.2d 893, 894 (1985); *Gatx Tank Erection Co. v. Gnewuch*, 221 Va. 600, 605, n.3, 272 S.E.2d 200, 204, n.3 (1980); *Johnson v. Chesterfield County*, 5 Va. App. 15, 19, 359 S.E.2d 833, 835 (1987). Pursuant to the actual risk test, an employee must simply show that his injury resulted as a direct consequence of his employment. We recognize that the conflicting language of previous decisions has given employers grounds to argue that the danger which harms the employee must be "peculiar" or "special" to the employment. In *Immer*, the Court sought to place this contention in the proper perspective when it explained:

> While, as the employer in the instant case points out, the opinion [in *Conner v. Bragg*, 203 Va. 204, 123 S.E.2d 393 (1962)] states, "the causative danger must be peculiar to the work and not common to the neighborhood," that statement cannot be read out of context with the rest of the opinion. In the same paragraph in which the statement is found, it is recognized that an injury is compensable if it appears "to have had its origin in a risk connected with the employment,

and to have flowed from that source as a rational consequence."

*Immer*, 207 Va. at 726, 152 S.E.2d at 257-58. Hence, we believe that an injury which is reasonably connected with, and flows from the employment, is compensable.

 Nevertheless, even after the clarification in *Brosnahan*, confusion may still arise over the actual risk test's meaning and application. For example, in *Metcalf v. A.M. Express Moving Systems*, 230 Va. 464, 339 S.E.2d 177 (1986), the Court offered as part of its test for an accident arising out of the employment, the quote that: "The causative danger must be peculiar to the work and not common to the neighborhood." *Id.* at 468, 339 S.E.2d at 180. Concurrently, the court asserted: "An accident arises out of the employment when the cause of the injury relates to the employment." *Id.* Given the frequently conflicting terminology employed in this field of the law, we must reach our decision by looking beyond the rhetorical formulations to the facts underlying the court's prior decisions in cases such as *Gough*, *Alvis* and *Metcalf*.

In *Metcalf*, the Supreme Court upheld the denial of compensation to an employee who had been shot while sleeping in his truck parked outside a depot in Alexandria. The driver and his partner had been ordered to remain in the city until the depot opened in the morning. Significantly, the Court concluded that the assailants in *Metcalf* undertook their attack solely for the purpose of killing Metcalf. The evidence showed that Metcalf's attackers incessantly pursued him without attempting to loot the truck or determine whether another driver was in the cab. No evidence suggested that the intent to commit robbery motivated the assailants. Hence, the Court determined that one could rationally infer that the assailants were likely motivated by a personal grievance unrelated to the claimant's employment as a truck driver.

The case of *Baggett Transportation Co. v. Dillon*, 219 Va. 633, 248 S.E.2d 819 (1978), also provides precedent to guide our determination. In *Baggett*, a truck driver was found dead at the side of his truck. The evidence showed that a single shot to the chest had killed the driver. The Court relied upon *Hopson v. Hungerford Coal Co.*, 187 Va. 299, 46 S.E.2d 392 (1948), to hold that an injury would not be compensable if it were the result of some per-

sonal matter unrelated to the claimant's employment. Significantly, the rest area where the driver was shot had been the location of previous random shootings. The facts in *Baggett*, reasoned the Court, led to a conclusion that an assailant's arbitrary and capricious act, unrelated to the employment, took the claimant's life. The Court concluded therefore that a presumption that the driver's injury resulted from his employment could not be applied. Since no other evidence linked the employment to the assault, the claim would not be compensable. Hence, in both *Baggett* and *Metcalf* the Supreme Court found that the claimants had failed to produce evidence which eliminated non-employment related factors as sources of the injuries.

Conversely, under the facts at bar, the evidence suggests that Christian's injury resulted neither from misfortune nor from personal grievances, but rather from his employment. Christian's assailants employed chicanery to stop his truck, and then robbed and shot him. It is reasonable to infer that his attackers believed Christian might be carrying expense money. Unlike in *Baggett*, there was no evidence introduced to show that the attack was part of a series of random and arbitrary actions. Moreover, in contrast to *Metcalf*, the evidence in this case negated any purely personal motive for the attack. We conclude therefore that the assailants attacked Christian in order to rob the money which truckers must carry to pay their expenses. Thus, in order to adhere to the guidelines promulgated by our Supreme Court, we decide that the attack was rationally related to, and arose out of, Christian's employment.

*Affirmed.*

Baker, J., Barrow, J., Benton, J., Cole, J., and Coleman, J., concurred.

Koontz, C.J., joined by Keenan, J., dissenting.

I respectfully dissent from the majority opinion in this case. The majority affirms the commission's use of an inference that truck drivers carry money to pay their expenses to support the conclusion that the robbery of Christian and his ultimate injury was a risk of his employment and therefore arose out of his employment. *On this record*, I disagree.

In my view, the majority either abandons the requirement that Christian prove that his injury "arose out of" his employment or inadvertently abandons the "actual risk test" and applies some form of the "positional risk test" to reach what might otherwise be a laudable result in this case. I do not disagree, as the majority notes, that confusion may still arise over the meaning and application of the actual risk test. My concern that we perpetuate that confusion on the facts in this record is the primary focus of my dissent and prevents my concurrence with the majority in this case.

Upon some basic points we can agree. "In every worker's compensation case the claimant must prove: (1) an injury by accident, (2) arising out of and (3) in the course of his employment." *Bradley v. Philip Morris, U.S.A.*, 1 Va. App. 141, 143, 336 S.E.2d 515, 516 (1985); Code § 65.1-7. The phrases "arising out of" and "in the course of" the employment are not synonymous and the claimant must establish both by a preponderance of the evidence. *Baggett Transportation Co. v. Dillon*, 219 Va. 633, 637, 248 S.E.2d 819, 822 (1978). "The words 'arising out of' . . . refer to the origin or cause of the injury while the phrase 'in the course of' pertains to the time, place and circumstances under which the accident occurred." *Id.* "An accident arises out of the employment if there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed." *R & T Investments v. Johns*, 228 Va. 249, 252, 321 S.E.2d 287, 289 (1984).

Assaults on employees are generally not foreseen or expected; however, a causal connection between employment and such injury can be established where "the probability of assault [is] augmented either because of the peculiar character of the claimant's job or because of the special liability to assault associated with the environment in which he must work." *R & T Investments*, 228 Va. at 253, 321 S.E.2d at 289 (quoting 1 A. Larson, *The Law of Workmen's Compensation* § 11.11(a)(1984)). To determine this causal connection various tests have been followed by the courts. One such test, the positional risk test, is not followed in Virginia. *Baggett*, 219 Va. at 640, 248 S.E.2d at 823. Under this test, "[a]n injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed claimant in the position where he was injured."

1 A. Larson, *The Law of Workmen's Compensation* § 6.50 at 3-6 (1986)(emphasis in original). In Virginia, an injury arises out of the employment only if it is an "actual risk" of the employment. Under this test, the injury must "have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." *Bradshaw v. Aronovitch*, 170 Va. 329, 335, 196 S.E. 684, 686 (1938). In short, "[t]he claimant must prove that the assault was directed against him as an employee or because of his employment." *Metcalf v. A. M. Express Moving Systems*, 230 Va. 464, 469, 339 S.E.2d 177, 180 (1986).

The facts in this record must be reviewed in the context of these principles. These facts are not complicated and are essentially not in dispute. They are critical, however, to a proper determination of whether Christian carried his burden of proving that his injury arose out of his employment and to the proper application of the actual risk test. It is clear that his injury occurred in the course of his employment; it happened within the period of employment, at a place where he was reasonably expected to be, and while he was reasonably fulfilling the duties of his employment.

In the early morning hours of October 16, 1984, Christian, a long distance truck driver, stopped at a truck stop on an interstate highway in Tennessee, cashed a wire transfer of $1,000, paid $425 for fuel, and left with $575 in his wallet. Some twenty miles farther down the highway, at approximately 3:00 a.m., he noticed a vehicle with flashing blue lights behind him. Presuming this to be a police vehicle, Christian stopped and exited his truck. Thereafter, he was robbed of his money and wallet and shot by his assailants. For that injury he seeks compensation.

Significantly, Christian does not assert that his assailants were present when he cashed the wire transfer nor does the record contain any additional facts to support an inference that his assailants could have known this fact. The record is devoid of any facts from which to infer that this truck stop or this highway was an environment which presented a special liability to assaults such as robberies. Furthermore, no facts in the record support an inference that Christian was targeted by his assailants because of the cargo in his truck; or that it is generally known or assumed that truck drivers carry money as opposed to credit cards with which to pay their expenses during a trip; or that truck drivers are among those classes of employees who, because of the peculiar character of their

employment, are subjected to an increased probability of robberies.

Consequently, Christian proved only that he was a victim of a purely random robbery on a public highway. While admittedly he was employed as a truck driver, he failed to prove any causal connection between his employment and the robbery. The majority, however, concludes from these facts, by the use of an inference "that the assailants attacked Christian in order to rob the money which truckers must carry to pay their expenses," that Christian's injury arose out of his employment. There is simply no factual basis in this record to support that inference. Accordingly, in my view, under the reasoning in *Metcalf*, Christian did not carry his required burden of proving that his injury arose out of his employment because he did not prove "that the assault [robbery] was directed against him as an employee or because of his employment."

I turn now to my concern that the majority inadvertently abandoned the actual risk test as applied by our Supreme Court in assault cases and applied some form of the positional risk test in this case. Admittedly, such a result can readily occur when drawing upon phrases contained in cases involving injuries other than assaults in the so-called "street cases" and consequently I characterize the majority approach as inadvertent rather than intentional.

A brief review of the format of the majority opinion forms the basis of this conclusion. First, relying primarily on *Immer & Co. v. Brosnahan*, 207 Va. 720, 152 S.E.2d 254 (1967), the majority determines that Christian need only show "that his employment subjected him to the risk of the robbery that injured him." *Immer* was not an assault case, but rather involved an employee who was injured in an automobile accident en route from his place of employment to the doctor's office to seek further treatment of a work-connected injury. In that context, the Supreme Court held that an injury arises out of the employment under the actual risk test if the accident appears " 'to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' " 207 Va. at 726, 152 S.E.2d at 258 (quoting *Conner v. Bragg*, 203 Va. 204, 209, 123 S.E.2d 393, 397 (1962)). The risk of injury in an automobile accident, characterized by the Court as the hazard of highway travel, became an

incident of the employee's employment because he was authorized and obligated to travel to the doctor by his employer. Thus, a causal connection between his employment and his additional injuries was established, i.e., his injury flowed from an obligation of his employment. In short, the Court emphasized its intent to require a causal connection between the injury and the employment to establish that the injury arises out of the employment.

In this context, requiring that Christian show "that his employment subjected him to the risk of the robbery that injured him" is consistent with the principles of *Immer*, only if that phrase contemplates that Christian establish a causal connection between his injury and his employment. However, if that phrase contemplates that Christian is merely required to establish that as a truck driver on the highway he was subject to the obvious risk of robbery and that he is therefore entitled to receive workers' compensation benefits, then that phrase conflicts with the Supreme Court's holding in *Metcalf*. While *Metcalf* has been severely criticized by no less authority than Professor Larson,[4] it is the law of the Commonwealth and *Metcalf* requires that "[t]he claimant must prove that the assault was directed against him as an employee or because of his employment." 230 Va. at 469, 339 S.E.2d at 180.

Similarly, neither *Southern Motor Lines v. Alvis*, 200 Va. 168, 104 S.E.2d 735 (1950), nor *Park Oil v. Parham*, 1 Va. App. 166, 336 S.E.2d 531 (1985) are assault cases. While *Continental Life Insurance Co. v. Gough*, 161 Va. 755, 172 S.E. 264 (1934), is an assault case, the majority disregards the fact that, as a collector of insurance premiums, the employee was within that class of employees generally recognized, because of the nature of their duties, are exposed to the risk of injury caused by assault for the purpose of robbery.

Nevertheless, when addressing *Baggett*, *R & T Investments* and *Metcalf*, all of which are assault cases, the majority gives little, if any, significance to the plain language employed by our Supreme Court in defining and applying the actual risk test to assault cases, which clearly is more restrictive than the broad language in cases such as *Immer*. Thus we find in *Baggett*: "In short, the risk was not peculiar to the work. We cannot say that Dillon's occupation

---

[4] *See* 1 A. Larson, *infra*, §§ 11.11(b) and 11.11(c) (Supp. 1987).

as a truck driver subjected him, to an abnormal degree, to being shot accidentally or *intentionally* alongside a public highway. Such a danger is one which members of the general public who are not truck drivers are likewise exposed." 219 Va. at 644, 248 S.E.2d at 825 (emphasis added). We find in *R & T Investments*: "The requisite nexus in an assault case is supplied if there is 'a showing that the probability of assault was augmented either because of the peculiar character of the claimant's job or because of the special liability to assault associated with the environment in which he must work.' " 228 Va. at 253, 321 S.E.2d at 289 (citation omitted). We find in *Metcalf*: "The claimant must prove that the assault was directed against him as an employee or because of his employment." 230 Va. at 469, 339 S.E.2d at 180.

From these decisions, I believe that it is clear that our Supreme Court has declined to hold that the occupation of a truck driver falls *within the class of employees who, because of the nature of their duties, are exposed to the risk of injury caused by assault for the purpose of robbery.* Where, however, the truck driver employee can show that the robbery was directed against him as an employee or because of his employment (because, for example, his cargo was the target of robbery, or because the environment in which his employment required him to work subjected him to special liability to robbery), he would be entitled to compensation. The latter example is illustrated in the recent Supreme Court decision in *Plummer v. Landmark Communications*, 235 Va. 78, 366 S.E.2d 73 (1988), in which the employee alleged that the deserted parking lot in which she was required to wait in the early morning hours to pick up her employer's newspapers for delivery and in which other employees had been previously "molested and hassled" by unknown third parties, amounted to special liability to assault associated with the environment in which she was required to work. In *Plummer*, the employee was injured when her unknown assailants fired a shot through the window of her automobile after saying, "Give me your purse." The Court reaffirmed its holding in *R & T Investments* that the "requisite nexus *in an assault case* is supplied if there is a showing that the probability of assault was augmented either because of the peculiar character of the claimant's job or because of the special liability to assault associated with the environment in which [she] must work." *Id.* at 87, 366 S.E.2d at 77 (emphasis added).

An injury resulting from an assault in connection with a robbery is perhaps a classic example of a risk of harm shared by most employees and the general public, particularly in public places. Indeed, it is hard to imagine an employment situation where an employee is required to go into a public place that would not subject the employee to the risk of robbery. In that context it is difficult in most cases to distinguish a robbery of an individual from a robbery directed against an individual as an employee or because of his employment, without specific facts indicating a rational distinction. In my view, it is this difficulty that has led the majority inadvertently to abandon the application of the actual risk test in assault cases as addressed by our Supreme Court and has resulted in the application of some form of the positional risk test in the present case.

Under the positional risk test, Christian's injury clearly would not have occurred *but for* the fact that his job as a long distance truck driver required him to be on the highway when these assailants committed the robbery which resulted in his injury. Similarly, if the facts established that the assailants targeted Christian for the robbery as an employee to obtain something of value connected with his employment, he would be entitled to compensation. Under these circumstances, no inferences would be required; there would be a clear factual basis on which to conclude that there was a causal connection between the injury to Christian and his employment. Without such facts, however, there is no rational basis to distinguish this robbery of Christian from the robbery of any member of the general public who might have been traveling on this interstate in Tennessee in the early morning hours of October 16, 1984 and fell victim to a random robbery. No facts indicate that this highway was an environment that subjected Christian, or the general public, to a special risk of robbery. More importantly, no facts indicate that the assailants attacked Christian to rob the money that truckers must carry to pay their expenses. Obviously they attacked him, not for personal grievances, but to obtain something of value. However, this record does not establish that they attacked him to obtain the "money which truckers must carry to pay their expenses" as opposed to the money that any traveler on that highway might possess. Therefore, Christian failed to demonstrate the requisite nexus between his employment and his injury; he did not show that he was attacked as an employee or because of his employment.

For these reasons, I would reverse the decision of the commission and hold that Christian did not meet his burden of proving that his injury arose out of his employment.